IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERITAGE REALTY MANAGEMENT, INC., | ) | Case No. CA 04 - 333 ERIE |
| Plaintiff | ) | Judge Sean McLaughlin |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN ALLIN d/b/a ALLIN COMPANIES, | ) | |
| Defendant | ) | TRIAL BY JURY OF 12 DEMANDED |

**ANSWER AND COUNTERCLAIM TO SECOND AMENDED COMPLAINT**

AND NOW, the Defendant, by and through his attorneys, ELDERKIN, MARTIN, KELLY & MESSINA, files the following Answer and Counterclaim to Second Amended Complaint, respectfully representing as follows:

FIRST DEFENSE

1. After reasonable investigation, the Defendant is without sufficient knowledge or information to form a belief as to the truth of the matters asserted in paragraph 1 of the Second Amended Complaint and the same are therefore denied.

2. It is denied that the Defendant is currently doing business as Snow Management Group.

      3. The averments of paragraph 3 of the Second Amended Complaint are conclusions of law to which no response is required.

      4. Denied as stated. The contract between the parties speaks for itself and all allegations regarding the content of that contract are denied to the extent such allegations do not accurately reflect the contract's express terms and conditions. It is further denied that the contract required that Allin provide services through Snow Management Group. It is further denied that a copy of the contract was attached to the Second Amended Complaint.

      5. Denied as stated. The contract between the parties speaks for itself and all allegations regarding the content of that contract are denied to the extent such allegations do not accurately reflect the contract's express terms and conditions.

      6. Denied as stated. The contract between the parties speaks for itself and all allegations regarding the content of that contract are denied to the extent such allegations do not accurately reflect the contract's express terms and conditions.

      7. Denied as stated. It is admitted that Heritage paid to Allin $340,482.90. Allin had performed and thereafter continued to perform a substantial amount of work and incurred expenses pursuant to his obligations under the contract. Moreover, it is denied that Heritage's payment was a "deposit." To the contrary, it was one of seven (7) periodic payments due under this fixed-fee contract. The total contract price was set at the outset and would not vary with the

amount of work performed. The contract has no provision for repayment or a return of any of the seven (7) payments under any circumstances. Allin received payment in exchange for being fully ready and able to immediately perform snow removal services at approximately 110 sites in 15 different states and, if needed, to perform such work. However, since this was a fixed-fee contract, Allin's entitlement to any one payment under the contract was not dependent upon the amount of snow removal work which was actually needed or which was performed. The amount paid by Heritage to Allin was ten percent (10%) of the total contract price which roughly corresponds with that percentage of the snow season which had elapsed by the time of the termination of the contract.

8. Denied as stated. The contract between the parties speaks for itself and all allegations regarding the content of that contract are denied to the extent such allegations do not accurately reflect the contract's express terms and conditions.

9. Denied. The Asset Purchase Agreement between Symbiot and Allin is dated November 3, 2004. The closing on this sale took place on or about November 22, 2004.

10. It is admitted that Heritage had terminated Allin's contract weeks before the November 22, 2004 closing of the Symbiot asset purchase was held. In fact, Heritage had filed this lawsuit before the Symbiot closing was held. Therefore, at the time of the asset purchase, the Heritage contract was no longer in effect and there was no need nor any reason to request Heritage's consent to any assignment of that contract to Symbiot.

11. The averments of paragraph 11 of the Second Amended Complaint are conclusions of law to which no response is required. It is denied that Symbiot received from Allin all of the money that Heritage had paid to Allin.

12. The averments of paragraph 12 of the Second Amended Complaint are conclusions of law to which no response is required. Heritage had terminated the contract with Allin weeks prior to the November 22, 2004 closing of the Symbiot asset purchase. It was Allin's intent that, if the Symbiot closing was successfully completed, Heritage would be requested to consent to the assignment of the Heritage contract to Symbiot. After the closing, Allin was a stockholder of Symbiot and Allin continued to work with Symbiot as an employee and, in these capacities, he would have managed the Heritage account. If Heritage had refused such a request for consent of assignment, it was Allin's intention to perform the work required by the Heritage contract by engaging Symbiot and by hiring the subcontractors from whom Allin had previously received quotes and proposals for the work. Thus, the work required of the Heritage contract would have been fully and competently performed in any event.

13. The averments of paragraph 13 of the Second Amended Complaint are conclusions of law to which no response is required. On or about November 4, 2004, Allin received Heritage's letter which purports to terminate the contract.

14. Denied. Allin had performed a substantial amount of work and incurred various expenses under the contract and as directed by Heritage. Moreover, Allin received

payment in exchange for being fully ready and able to immediately perform snow removal services at approximately 110 sites in 15 different states and, if needed, to perform such work. However, since this was a fixed-fee contract, Allin's entitlement to any one payment under the contract was not dependent upon the amount of snow removal work which was actually needed or which was performed. The amount paid by Heritage to Allin was ten percent (10%) of the total contract price which roughly corresponds with that percentage of the snow season which had elapsed by the time of the termination of the contract.

15. Admitted.

16. Admitted.

COUNT I – Breach of Contract

17. Allin hereby incorporates by reference paragraphs 1 through 16 stated above as if the same were fully set forth herein.

18. Denied.  The asset sale to Symbiot did not take place in October, 2004.  The Asset Purchase Agreement was dated November 3, 2004 and the closing was held on or about November 22, 2004.  Heritage had terminated its contract with Allin weeks prior to the November 22, 2004 closing of the Symbiot asset purchase.  It was Allin's intent that, if the Symbiot closing was successfully completed, Heritage would be requested to consent to the assignment of the Heritage contract to Symbiot.  After the closing, Allin was a stockholder of

Symbiot and Allin continued to work with Symbiot as an employee and, in these capacities, he would have managed the Heritage account. If Heritage had refused such a request for consent of assignment, it was Allin's intention to perform the work required by the Heritage contract by engaging Symbiot and by hiring the subcontractors from whom Allin had previously received quotes and proposals for the work. Thus, the work required of the Heritage contract would have been fully and competently performed in any event.

19. The averments of paragraph 19 of the Second Amended Complaint are conclusions of law to which no response is required.

20. The averments of paragraph 20 of the Second Amended Complaint are conclusions of law to which no response is required.

21. The averments of paragraph 21 of the Second Amended Complaint are conclusions of law to which no response is required.

22. The averments of paragraph 22 of the Second Amended Complaint are conclusions of law to which no response is required.

23. Denied. Allin had performed a substantial amount of work and had incurred various expenses under the contract and as directed by Heritage.

24. The averments of paragraph 24 of the Second Amended Complaint are conclusions of law to which no response is required.

25. The averments of paragraph 25 of the Second Amended Complaint are conclusions of law to which no response is required.

26. The averments of paragraph 26 of the Second Amended Complaint are conclusions of law to which no response is required.

WHEREFORE, the Defendant, John Allin, respectfully requests that this Honorable Court enter judgment in his favor and against the Plaintiff, plus costs of the suit.

### SECOND DEFENSE

27. The Second Amended Complaint fails to state a claim upon which relief can be granted.

### THIRD DEFENSE

28. Allin is entitled, under the contract and/or under common law principles, to offset against the Plaintiff's claims those costs incurred by Allin as a result of work and services

performed by Allin and all equipment and materials supplied by Allin as of the date of Heritage's alleged termination of the contract.

## FOURTH DEFENSE

29. The contract does not provide for the return of any of the installment payments to be made by Heritage thereunder. Since the contract permitted Heritage to terminate the contract at any time, with or without cause, the parties did not agree to require the return of any monies paid by Heritage thereunder if the contract was terminated. Moreover, Allin received payment in exchange for being fully ready and able to immediately perform snow removal services at approximately 110 sites in 15 different states and, if needed, to perform such work. However, since this was a fixed-fee contract, Allin's entitlement to any one payment under the contract was not dependent upon the amount of snow removal work which was actually needed or the amount of work which was performed. The amount paid by Heritage to Allin was ten percent (10%) of the total contract price, which roughly corresponds with that percentage of the snow season which had elapsed by the time of the termination of the contract.

## FIFTH DEFENSE

30. The Plaintiff's claims are barred by the applicable statute of limitations.

## COUNTERCLAIM

1. For purposes of this counterclaim only, Defendant, John Allin ("Allin") hereby incorporates by reference as if set forth fully herein those allegations of the Second Amended Complaint and of this Answer to the limited extent needed to establish the facts necessary to support this Court's jurisdiction over this matter.

2. In or around January 2004, Heritage approached Allin about providing snow removal services for properties owned by Plaintiff.

3. Heritage entered into negotiations with Allin regarding such work and on October 12, 2004, a written contract was entered into by and between Heritage and Allin for the removal of snow and ice by Allin from numerous Heritage properties in various states.

4. Prior to executing the written contract, Heritage had made representations to Allin of its intent to enter into a contract with him for the aforementioned snow removal services.

5. The representations included an August 14, 2003 letter in which Heritage expressed its willingness to enter into a contract with Allin for this snow removal work. Heritage also requested and urged Allin to commence the work and effort which would be necessary for Allin to be fully ready and able to perform all of the required snow removal work at the

commencement of the upcoming and quickly approaching winter season. This snow removal work was to span some 15 states and approximately 115 commercial sites.

6. In direct reliance on those statements of Heritage, and in anticipation of the contract, Allin provided services and incurred expenses necessary to the performance of the contract. Heritage had requested and was aware of these efforts by Allin.

7. Allin and his employees devoted substantial time and energy in securing the appropriate personnel and equipment to adequately meet its obligations under the contract, including the hiring and training field managers in several regions to supervise the snow removal at Heritage properties located within those regions, and working to secure contracts with various service providers for the removal of snow and ice.

8. As a result of Allin's reliance on Plaintiff's representations, he incurred costs for work, services, equipment and materials which he and his employees had supplied.

WHEREFORE, it is respectfully requested that the Court enter judgment in favor of John Allin d/b/a Allin Companies and against Heritage for restitution for costs incurred in anticipation of performing the contract together with interest and costs of suit.

        Respectfully submitted,

        ELDERKIN, MARTIN, KELLY & MESSINA

By   /s/ Craig A. Markham
    Craig A. Markham, Esquire
    Attorney for Defendant
    150 East Eighth Street
    Erie, Pennsylvania 16501
    (814) 456-4000