IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERITAGE REALTY MANAGEMENT, INC., | ) ) | |
| *Plaintiff* | ) ) | |
| v. | ) ) | Case No. CA 04-333 ERIE |
| JOHN ALLIN d/b/a ALLIN COMPANIES, | ) | Judge Sean McLaughlin |
| *Defendant-Third Party Plaintiff* | ) ) | |
| v. | ) ) | |
| SYMBIOT BUSINESS GROUP, INC. and SYMBIOT SNOW MANAGEMENT NETWORK, LLC, | ) ) ) | |
| *Third Party Defendants* | ) | |

**MEMORANDUM IN SUPPORT OF THIRD PARTY DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE**

**I.   BACKGROUND**

This action arises out of an agreement between Plaintiff, Heritage Realty Management, Inc., ("Heritage"), and Defendant, John Allin, d/b/a Allin Companies and Snow Management Group ("Allin"), dated October 12, 2004, by which Allin was to provide snow plowing services at Heritage's properties. Pursuant to their agreement, on or about October 15, 2004, Heritage made the first payment to Allin in the amount of $340,482.90. (Complaint, ¶10). When Heritage learned that Allin intended to sell some of his assets, Heritage terminated the contract and demanded return of its initial payment to Allin. (Complaint, ¶¶16-17).

Heritage commenced this action on November 25, 2004. Discovery was originally scheduled to close on July 1, 2005. Both parties changed counsel, and by order entered June 10, 2005, discovery was extended to October 1, 2005.

On September 12, 2005, Heritage filed a First Amended Complaint. Allin filed an Amended Answer and asserted a cross-claim, seeking recovery for costs and expenses Allin incurred before the date of the Heritage/Allin contract. On October 31, 2005, this court again extended discovery, and discovery was scheduled to close on December 10, 2005.

On February 17, 2006, after discovery closed and the court heard discovery related motions, Heritage filed a second amended complaint. Under the court's current case management order, Heritage's pre-trial narrative was due March 6, 2006, Allin's pre-trial narrative was due March 27, 2006, the motions for summary judgment were due March 6, 2006. Heritage has filed its pre-trial narrative, and on March 6, 2006 it also filed a motion for summary judgment. Heritage's motion for summary judgment remains pending before the court.

On March 8, 2006, in response to Heritage's second amended complaint, Allin filed an answer to the second amended complaint, along with its counterclaim against Heritage. On March 9, 2006, without leave of court, Allin also filed the third party complaint against Symbiot Business Group, Inc. and Symbiot Snow Management Network, LLC (collectively "Symbiot").

Symbiot objects to its untimely and unauthorized joinder for three reasons: (1) Allin failed to obtain leave of court to join Symbiot as required by Fed.R.Civ.P. 14; (2) Symbiot is prejudiced by its late joinder; and (3) Allin's third party complaint fails to allege that Symbiot is liable over to Allin. For each of these reasons, Allin's third party complaint should be dismissed.

## II. ARGUMENT

### A. The third party complaint should be stricken for Allin's failure to obtain prior leave of court as required by Fed.R.Civ.P 14(a)

Fed.R.Civ.P. 14(a) provides that a defendant

- 2 -

> [m]ay cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. *The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.*

(Emphasis added). Apparently Allin's position is that because he joined Symbiot within ten days of the filing of his Answer to Heritage's Second Amended Complaint, leave of court was not required. Allin's contention is mistaken and leave of court was necessary.

> In determining whether a third-party complaint was properly filed without leave of court, courts have interpreted the phrase "original answer" in three different ways.
> 
> The first interpretation is the plain language or literal reading of the rule. Under this interpretation, the "original answer" is the one that responds to the complaint that commenced the action. Courts following this interpretation find that leave of court is required for every third-party complaint unless it is filed within 10 days of the answer to the original complaint or counterclaim. Another court has taken the opposite view and held that any answer to an amended complaint becomes the original answer when filed because it supplants any prior answers. Under that view, the third-party complaint must be filed within ten days of any answer to an amended complaint.
> 
> The third and more pragmatic approach allows an answer to an amended complaint to function as an original answer, within the meaning of the rule, if the amended complaint changes a need for impleader. Under this view, the amended complaint must set forth new theories of liability, not just include new factual allegations. If the third-party complaint is filed within ten days of filing the answer to such an amended complaint, leave of court is not required. This "functional" reading of the rule is the most widely adopted view . . . .

*United National Insurance Corporation v. Jefferson Downs Corporation*, 220 F.R.D. 456, 457-58 (M.D.Lo. 2003) (footnotes and emphasis omitted). *See also Guaranty Company of North America v. Pinto,* 208 F.R.D. 470 (D.Mass. 2002).

The district court for the Eastern District of Pennsylvania recently recognized that the "third, pragmatic approach" is the appropriate test for determining whether leave of court is required. In *Reynolds v. Rick's Mushroom Service, Inc.*, 2003 WL 22741335 (E.D.Pa. 2003), plaintiff filed his original complaint in 2001, and filed an amended complaint in 2003. Within ten days of the date defendants filed their answer to the amended complaint, the defendants filed a third-party complaint without leave of court. The court held that the third-party complaint was improper under Rule 14 and that leave of court was required. The defendants argued that the "second approach" above should apply and that their answer to the amended complaint was the "original answer" to that amended complaint. The court rejected this argument, finding that "[n]o court in this circuit has adopted such a strict interpretation . . . ." *Reynolds*, 2003 WL 22741335 at *2. The court then utilized the "third, pragmatic approach" and concluded that "[w]hat is significant is whether the Amended Complaint created 'new theories of liability.'" *Reynolds*, 2003 WL 22741335 at *4. Even though the amended complaint added two new counts, the court found that "the gravamen of Plaintiffs' claims and the theory on which they rely remain unchanged." *Reynolds*, 2003 WL 22741335 at *4. Since the amended complaint did not add any new theory of liability, the court struck the third-party complaint because it was filed without prior leave of court.

The need for prior court approval is even more compelling in our case. Heritage's original complaint asserted two counts – one for fraud and the other for breach of contract. Heritage's theory in the breach of contract count, as alleged in the original complaint filed in November 2004, was that under the contract between Heritage and Allin, Heritage is entitled to the return of all monies paid to Allin less costs for work performed, but Allin allegedly had not performed work under the contract, and therefore Heritage claimed it was entitled to a return of all of its payment. In the First

Amended Complaint, Heritage merely dropped the fraud count and its breach of contract claim remained.

On February 17, 2006, a month after discovery had closed, Heritage requested leave to file a second amended complaint.[1] In its motion seeking leave to file this complaint, Heritage alleged that based on prior discovery, Heritage wished to amend its complaint "to more specifically plead Allin's actions in breach of the parties' contract by alleging additional factual paragraphs reflecting Allin's admissions regarding the Symbiot Sale and Allin's resulting inability to perform his contractual obligations to Heritage." (Heritage's Motion for Leave to Amend Complaint to Conform to Evidence, docket entry no. 36, ¶10). Heritage also noted in its motion that its proposed amended complaint "merely amplifies the current allegations of the complaint." (*Id.*, ¶14).

As Heritage's own motion recognized, its second amended complaint did not introduce any new theories of liability in this case. It did not even introduce a new count under the same theory. Like the vast majority of courts which have addressed this issue, this court should apply the "pragmatic approach" and conclude that Allin was required to obtain court approval to join Symbiot unless Heritage's second amended complaint introduced a new theory of liability that first gave rise to a potential claim against a person not yet a party to the litigation. Because Heritage's second amended complaint did not introduce any new theory of liability, Allin was not permitted to join Symbiot in this action without first obtaining leave of court. Since Allin filed his third-party complaint against Symbiot without prior leave of court, it was filed in contravention of Fed.R.Civ.P. 14(a) and it should be stricken.[2]

---

[1] This highlights the need for court approval. If Heritage needs court approval just to file an amended complaint which merely amplifies its exiting claim, surely Allin should obtain court approval before it causes a new party to be brought into the litigation.
[2] Rule Fed.R.Civ.P. 14(a) provides that "[a]ny party may move to strike the third-party claim . . . ."

### B.  Allin's joinder of Symbiot is untimely and prejudicial

In addition to failing to obtain the necessary leave of court to join Symbiot, Allin's joinder at this late date is untimely and prejudicial. "When faced with motions to dismiss for late joinder, the courts of this circuit have examined the (1) possible prejudice of the plaintiff, (2) the possible prejudice to the third-party defendants, (3) the reasons for the delay in joinder, and (4) whether the joinder will delay or unnecessarily complicate the trial." *United States v. New Castle County*, 111 F.R.D. 628, 632 (D.Del. 1986). *See also Dishong v. Peabody Corp,* 219 F.R.D. 382, 385 (E.D.Vir. 2003). Although Symbiot cannot speak to whether Heritage will be prejudiced, the three remaining factors all weigh heavily against the joinder of Symbiot.

#### 1.  Symbiot is prejudiced by the delay

This case has been in litigation since 2004. Discovery has closed. Heritage's pre-trial narrative has been filed, and its motion for summary judgment is pending. Symbiot believes that court conference have already been conducted. If it were not for the joinder of Symbiot, this matter would be nearly ready for trial. Volumes of documents have been exchanged and all discovery the parties thought necessary has been completed. Symbiot has not been a party to any of the discovery, any of the arguments or any of the conferences conducted by the court. Symbiot is prejudiced by being brought in at this late stage when the case is about ready to proceed to trial.

If Allin's third-party complaint were allowed, the court would have to reopen discovery. It is likely at least Heritage will push to have this case tried, and would be difficult if not impossible for Symbiot to obtain the time to conduct discovery that Heritage and Allin were granted. Symbiot should not be rushed to complete its discovery and any efforts to curtail Symbiot's right to discovery would also be prejudicial.

Additionally, at this stage, documents and witnesses may be unavailable which were available to Heritage and Allin. Symbiot has not even had time to determine who the witnesses may be and what documents it may need to adequately defend itself in this litigation.

It is prejudicial to Symbiot to be forced into this litigation at this very late stage. This factor weighs heavily in favor of denying Allin's right to join Symbiot.

### 2. There is no good reason for Allin's delay

Likewise, there is no good reason for Allin's delay in joining Symbiot in this action. Allin could have asserted his third-party complaint in accordance with Rule 14 when Allin first filed his answer to the original complaint in this action. Allin asserts that Symbiot is liable to Allin because "[a]s part of the consideration exchanged in this asset sale to Symbiot, and/or in connection with that sale, Symbiot agreed and promised to accept certain existing liabilities of Allin . . . ." (Third-Party Complaint, ¶5). The assets sale to Symbiot, to which Allin refers, closed on November 22, 2004. This sale to Symbiot is the same sale referred to in Heritage's original complaint, which is the same sale that prompted Heritage to terminate its contract with Allin and file this action. (Complaint, ¶16). Allin filed his original answer to the original complaint on January 14, 2005, and at that time Allin knew all the facts which formed the basis for his claim that Symbiot is liable to Allin. Since Allin has known since November 2004 the claims he now asserts against Symbiot, there is no good reason for Allin's delay in asserting his claim against Symbiot. This factor also weighs heavily in favor of denying Allin's right to join Symbiot.

### 3. The joinder of Symbiot will delay and complicate the trial

Finally, the joinder of Symbiot will necessarily delay the trial, because Symbiot has not had the opportunity to engage in any discovery and discovery has already closed. Symbiot would insist on adequate time to conduct its discovery, just as Heritage and Allin had adequate time to conduct their discovery. By necessity this will significantly delay the trial in this case.

The joinder of Symbiot will also necessarily complicate the issues involved in this litigation. The claims between Heritage and Allin are relatively confined to whether Heritage properly terminated the contract, and what losses Heritage and Allin sustained as a result. The indemnity claim Allin asserts against Symbiot raises a completely different issue – who has indemnity obligations under the asset sale agreement between Allin and Symbiot. This is a complex agreement and the indemnity obligations between the parties are contested. The witnesses and evidence relating to the obligations under the asset sale agreement between Allin and Heritage are unrelated to the witnesses and evidence relevant to the claims between Heritage and Allin. The joinder of Symbiot here will introduce wholly unrelated and complex issues.

If Allin could also assert against Symbiot the claims Heritage raises in its separate action against Symbiot (and it cannot as explained below), this will introduce even more new and complex issues to this litigation, including issues of whether Allin was insolvent at the time of or after the Symbiot sale.

Additionally, if Symbiot is joined in this action on Allin's third-party complaint, Symbiot may be required to file compulsory counterclaims against Allin under Fed.R.Civ.P. 13(a) arising out of the asset sale agreement between Allin and Symbiot, raising even more wholly unrelated issues.

Even if Allin had properly sought leave to join Symbiot in this action, all the factors weigh heavily against joinder. For this reason as well the court should strike the third-party complaint against Symbiot.

### C.    The third party complaint does not assert a claim for contribution or indemnity

Again, Rule 14(a) provides that a third-party defendant may be joined "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Allin asserts that Symbiot would be liable for any judgment entered in favor of Heritage "based upon Symbiot's agreement with Allin and/or based upon the causes of action set forth in the civil action filed by Heritage against Symbiot at no. 06-00047 . . . ." (Third-Party Complaint, ¶8). In effect, then, Allin is asserting two claims against Symbiot: (1) Symbiot is allegedly liable in contribution or indemnity under the terms of the asset sale agreement between Allin and Symbiot, and (2) Symbiot is allegedly liable for the reasons asserted in Heritage's separate action against Symbiot.

The second asserted ground for liability is improper and should be dismissed.[3] "A third-party complaint may not set forth a claim that the third-party defendant is directly liable to the original plaintiff; it is limited to claims of secondary or derivative liability." *In re One Meridian Plaza Fire Litigation*, 820 F.Supp. 1492, 1496 (E.D.Pa. 1993). See also, *U.S. Small Business Administration v. Smith, Stratton, Wise, Agher & Brenn, LLP,* 2006 WL 305398 at *2 (E.D.Pa. 2006); *Siemens Westinghouse Power Corporation v. Dick Corporation*, 299 F.Supp.2d. 242, 248 (S.D. N.Y. 2004); *Con-Tech Sales Defined Benefit Trust v. Cockerham*, 715 F.Supp. 701, 704 (E.D.Pa. 1989).

---

[3] Symbiot also denies that the first ground is proper under Rule 14. Similarly, Allin's assertion of a third-party claim against Symbiot by merely incorporating allegations in a completely separate action is improper and inconsistent with Fed.R.Civ.P. 8(a).

In Heritage's separate action against Symbiot, Heritage asserts that Symbiot is alone and directly liable to Heritage. This cannot be the basis for a third party complaint in this case because it is an assertion that Symbiot is alone liable to the plaintiff. Since in Heritage's action against Symbiot, Heritage alleges Symbiot is alone and directly liable to Heritage, Allin cannot assert a third-party complaint against Symbiot on the grounds Heritage asserts in its separate action against Symbiot. Since Allin's third-party claim that Symbiot could be liable on the grounds asserted in Heritage's separate complaint against Symbiot fails to assert a claim that Symbiot is or may be liable to Allin for any part of Heritage's claim against Allin, that portion of Allin's third-party complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**D.     The forum selection clause in the agreement between Allin and Symbiot precludes Allin from asserting claims against Symbiot in this action**

In his Third Party Complaint, Allin asserts that Symbiot "agreed and promised to accept certain existing liabilities of Allin . . ." (Third-Party Complaint, ¶5), and that Symbiot is allegedly liable to Allin "based upon Symbiot's agreement with Allin . . . ." (Third-Party Complaint, ¶8).

The agreement to which Allin refers is a written asset purchase agreement dated November 3, 2004, the closing on which occurred on November 22, 2004. That agreement contains forum selection provisions which provide as follows:

> (o)     Submission to Jurisdiction.
>
> (i)     *Each of the Parties submits to the jurisdiction of any federal court sitting in Salt Lake County, Utah* in any action or proceeding arising out of or relating to this Agreement, agrees that all claims in respect of the action or proceeding may be heard and determined in any such court *and agrees that*, except as permitted by Section 7(f) above, *such jurisdiction shall be exclusive with respect to disputes arising under the Transaction Documents or the transaction contemplated thereby*;

    (ii) except as permitted by Section 7(f) above, *each Party also agrees not to bring or seek removal of any action or proceeding arising out of or relating to this Agreement in or to any other court*; and

    (iii) except as permitted by Section 7(f) above, each of the Parties waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety, or other security that might be required of any other Party with respect thereto.

    Each Party agrees that a final judgment in any action or proceeding brought in accordance with this Section 10(o) shall be conclusive and may be enforced by suit on the judgment or in any other manner provided by law or in equity.

(Agreement dated November 3, 2004, ¶10; emphasis added).[4]

    The claims Allin attempts to assert against Symbiot in the third party complaint all "arise out of or relate to" the agreement between Allin and Symbiot. Allin expressly agreed that any such claims must be brought only in Salt Lake County, Utah. Forum selection clauses are presumptively valid and the plaintiff bears the burden of demonstrating why he should not be bound by his contractual choice of forum. *See, e.g., In re Astropower Liquidating Trust*, 335 B.R. 309, 327 (D.Del. 2005). There is no reason not to apply the forum selection clause in this action. If Allin wants to pursue a claim for contribution or indemnity against Symbiot, he must do so by bringing that claim in Salt Lake County, Utah, not in Erie County, Pennsylvania. Accordingly, venue is improper in this court and the third party complaint should be dismissed for improper venue in accordance with 28 U.S.C. §1406(a).

---

[4] Symbiot assumes Allin will not dispute the forum selection terms of the assert purchase agreement. If he does dispute its terms, Symbiot will promptly file an affidavit with the terms of the agreement to make the agreement part of the record before this court. Section 7(f) of the agreement relates to covenants which are not relevant to the issue presented in this motion.

### III.  CONCLUSION

As explained above, the third-party complaint against Symbiot should be dismissed because it was filed without the required leave of court. Additionally, the third-party complaint is untimely and prejudicial to Symbiot, and will delay and complicate the trial in this case, and therefore the third-party complaint should be dismissed even if leave of court had been sought. Allin's claim that Symbiot could be liable over for the reasons set forth in Heritage's separate complaint against Symbiot fails to state a claim under Rule 14(a), and it should be dismissed. Finally, Allin expressly agreed that any claim he may have against Symbiot must be brought in Utah, not in Pennsylvania. For all of these reasons, Symbiot respectfully requests that this Court strike Allin's third-party complaint and dismiss Symbiot from this action.

Respectfully submitted,

THE McDONALD GROUP, L.L.P.
By: /s/ *Daniel J. Pastore*
    Daniel J. Pastore
    Pa. I.D. No. 44619
    456 West 6th Street
    P. O. Box 1757
    Erie, PA 16507-0757
    Phone: (814) 456-5318
    Email: dpastore@tmgattys.com

    Attorneys for Third Party Defendants

f:\cfd\3100\3119 (symbiot)\memorandum of law.doc