IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERITAGE REALTY MANAGEMENT, INC., | ) ) | |
| *Plaintiff* | ) ) | |
| v. | ) ) | Case No. CA 04-333 ERIE |
| JOHN ALLIN d/b/a ALLIN COMPANIES, | ) | Judge Sean McLaughlin |
| *Defendant-Third Party Plaintiff* | ) ) | |
| v. | ) ) | |
| SYMBIOT BUSINESS GROUP, INC. and SYMBIOT SNOW MANAGEMENT NETWORK, LLC, | ) ) ) | |
| *Third Party Defendants* | ) | |

**MEMORANDUM IN SUPPORT OF THIRD PARTY DEFENDANTS' RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE**

**I.    BACKGROUND**

This action arises out of an agreement between Plaintiff, Heritage Realty Management, Inc., ("Heritage"), and Defendant, John Allin, d/b/a Allin Companies and Snow Management Group ("Allin"), dated October 12, 2004, by which Allin was to provide snow plowing services at Heritage's properties. Pursuant to their agreement, and on or about October 15, 2004, Heritage made the first payment to Allin in the amount of $340,482.90. (Complaint, ¶10). When Heritage came to believe that Allin was experiencing financial difficulties, Heritage terminated the contract and demanded return of its initial payment to Allin. (Complaint, ¶¶16-17; *see also* Heritage letter to Allin dated November 3, 2004). When Allin refused to return the Heritage payment, Heritage commenced this action.

### A.     Factual Background

The contract between Heritage and Allin was dated October 12, 2004.  By letter dated November 3, 2004, Heritage notified Allin that Heritage was terminating the Heritage/Allin contract, and Heritage demanded return of its initial payment to Allin.

Also on November 3, 2004, Allin and Symbiot entered into a definitive Asset Purchase Agreement (the "APA") by which Symbiot agreed to buy certain assets and assume certain liabilities of Allin's snowplowing business. The APA, exclusive of its exhibits, is Exhibit A to Symbiot's Motion. In the negotiations which led up to the execution of the APA, Allin was represented by the Cleveland office of the law firm of Roetzel & Andress. (Haymore Affidavit, Motion Exhibit C, ¶2). The APA was negotiated between the parties and their counsel. The negotiations ultimately resulted in the comprehensive, detailed APA which is 43 pages in length and contains 266 pages of exhibits.

The APA contemplated a formal closing on the sale subsequent to the date of the execution of the APA. (APA, Motion Exhibit 1, ¶2(e)).

On November 15, 2005, after the APA was executed, but prior to the closing on the agreement between Allin and Symbiot, Heritage commenced this action against Allin. As a result, Symbiot and Allin, through their counsel, negotiated an amendment to the APA to address both the Heritage litigation and one other litigation matter in which Allin was involved. (Haymore Affidavit, Motion Exhibit C, ¶6). This separate agreement culminated in a three page "letter agreement" dated November 22, 2004 (the "Letter Agreement"). The Letter Agreement is Exhibit B to Symbiot's Motion.

The closing on the APA occurred in Salt Lake City, Utah, on November 22, 2004 at the law offices of Symbiot's counsel, Stoel Rives LLP.  (APA, Motion Exhibit 1, ¶2(e); Haymore Affidavit,

Motion Exhibit C, ¶7). The Letter Agreement was executed on November 22, 2004, the same day as the closing on the APA. (Haymore Affidavit, Motion Exhibit C, ¶8).

After the closing, Allin became employed by Symbiot, although he is no longer employed by Symbiot. (*Id.*, ¶9).

### B.     Procedural Background

Heritage commenced this action on November 15, 2004. On February 17, 2006, after discovery closed, Heritage filed a second amended complaint. Heritage's motion for summary judgment, and Allin's cross-motion for summary judgment, are pending before the court.

On March 8, 2006, in response to Heritage's second amended complaint, Allin filed an answer to the second amended complaint, along with its counterclaim against Heritage. On March 9, 2006, without leave of court, Allin also filed a third party complaint against Symbiot.

On April 10, 2006, Symbiot filed a motion to dismiss or strike the third party complaint. In its motion, Symbiot raised the following objections to the complaint and Symbiot's joinder in this action:

(1) Allin was required to obtain leave of court before joining Symbiot as a third party defendant;

(2) Even if Allin sought leave of court to join Symbiot, that motion should be denied because Symbiot would be prejudiced by the late joinder of Symbiot in this action;

(3) Venue of Allin's action against Symbiot is improper because Allin and Symbiot agreed that any claims arising out of the APA must litigated only in Salt Lake City, Utah; and

(4) Allin's claim that Symbiot can be liable for the reasons set forth in another action fails to state a claim under Fed.R.Civ.P. 14.

In response to Symbiot's motion to dismiss or strike, Allin filed an opposition, and a separate motion for leave to file a third party complaint *nunc pro tunc*. On May 3, 2006, this court entered a text order granting Allin's motion for leave to file his third party complaint *nunc pro tunc*. That order states that "upon consideration of the Defendant's Motion for Leave to file Third Party Complaint Nunc Pro Tunc; IT IS HEREBY ORDERED that said motion is GRANTED as the court finds no prejudice will result in the joinder." This court has not entered a separate order disposing of Symbiot's motion to dismiss or strike.

Symbiot believes that this court's order of May 3, 2006, granting Allin's motion for leave to file a third party complaint *nunc pro tunc*, in effect overrules Symbiot's first two objections – *i.e.,* Symbiot's contention that leave of court was required to join Symbiot, and that Symbiot was prejudiced by the time at which it was joined. However, the court's May 3, 2006 order does not address Symbiot's two remaining objections to its joinder and the third party complaint.

To re-present Symbiot's remaining objections which were raised in Symbiot's first motion to dismiss or strike, but which were not addressed in this court's May 3, 2006 order, Symbiot files this renewed response to Allin's third party complaint.

Since Symbiot and Allin expressly agreed that all disputes arising out of or relating to the APA were to be litigated only in Salt Lake County, Utah, and since the Letter Agreement and Allin's claims thereunder directly relate to the APA, Allin's attempt to litigate his claims against Symbiot in Pennsylvania should be rejected and Symbiot's motion to dismiss should be granted.

**II.     ARGUMENT**

In his third party complaint, Allin asserts that if Allin is found liable to Heritage, then Symbiot may be liable to Allin "based on Symbiot's agreement with Allin and/or based upon the

causes of action set forth in the civil action filed by Heritage against Symbiot at No. 06-0047, which are incorporated herein to the limited extent needed to support Allin's cross-claim against Symbiot." (Third Party Complaint, ¶8). All of Allin's claims are encompassed by the forum selection clause of the APA, which requires that any dispute between Allin and Symbiot be litigated only in Utah. Accordingly, the third party complaint should be dismissed. In addition, Allin's claim that Symbiot could be liable in contribution for the reasons asserted by Heritage in a separate action is not a proper third party claim and it should be dismissed both for that reason and because venue in this forum is improper.

    **A.**    **The forum selection clause in the agreement between Allin and Symbiot requires Allin to assert his claims against Symbiot only in Utah, and therefore this court should dismiss this action and Allin can, if he chooses to do so, reassert his claims in that forum**

As will be shown, (1) the forum selection clause in the APA, which requires any action or dispute between Allin and Symbiot to be litigated only in Utah, is valid and should be enforced; (2) the forum selection clause in the APA applies to any dispute arising under the APA, the Letter Agreement, or both, and encompasses all claims Allin asserts against Symbiot in his third party complaint; and (3) this court should enforce the forum selection clause by dismissing the third party complaint.

    1.    <u>The forum selection clause is valid and enforceable</u>

The APA contains a detailed forum selection clause, which provides as follows:

    (o)    <u>Submission to Jurisdiction</u>.

    (i)    *Each of the Parties submits to the jurisdiction of any federal court sitting in Salt Lake County, Utah in any action or proceeding arising out of or relating to this Agreement*, agrees that

>       all claims in respect of the action or proceeding may be heard and determined in any such court *and agrees that*, except as permitted by Section 7(f) above, *such jurisdiction shall be exclusive with respect to disputes arising under the Transaction Documents or the transaction contemplated thereby*;
>
>       (ii)   except as permitted by Section 7(f) above, *each Party also agrees not to bring or seek removal of any action or proceeding arising out of or relating to this Agreement in or to any other court*; and
>
>       (iii)   except as permitted by Section 7(f) above, each of the Parties waives any defense of inconvenient forum to the maintenance of any action or proceeding so brought and waives any bond, surety, or other security that might be required of any other Party with respect thereto.
>
>   Each Party agrees that a final judgment in any action or proceeding brought in accordance with this Section 10(o) shall be conclusive and may be enforced by suit on the judgment or in any other manner provided by law or in equity.

(APA, Motion Exhibit A, ¶10; emphasis added).

The claims Allin attempts to assert against Symbiot in the third party complaint all "arise out of or relate to" the agreement between Allin and Symbiot. In the APA Allin expressly agreed that any and all such claims must be brought only in Salt Lake County, Utah. This provision of the agreement between Allin and Symbiot should be enforced.

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Insurance Company,* 55 F.3d 873, 877 (3d Cir. 1995).

The enforceability of forum selection clauses is well settled.

>   In *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 92 S.Ct. 1907, the Supreme Court held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id*. at 10, 92 S.Ct. at 1913. A forum selection clause is "unreasonable" where the defendant can make a "strong showing" *id*. at 15, 92 S.Ct.

> at 1916, either that the forum thus selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," *id*. at 18, 92 S.Ct. at 1917, or that the clause was procured through "fraud or overreaching," *id*. at 15, 92 S.Ct. at 1916.

*Foster v. Chesapeake Insurance Company*, 933 F.2d 1207, 1219 (3d Cir. 1991); *Barbuta v. Medicine Shoppe International, Inc.*, 166 F.Supp.2d 341, 346 (W.D.Pa. 2001).

> A forum selection clause is presumptively valid unless the resisting party can show that enforcement of the clause would be unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). To show that a forum selection clause is unreasonable and unenforceable, the resisting party must establish: "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir.1983); *see also Arentowicz* [*v. Cap Gemini Ernst & Young U.S., LLC*], 2004 WL 1834600, at *3 [(D.N.J. 2004)]. Thus the burden is on Plaintiff to demonstrate that the forum selection clause here is unenforceable.

*Matthews v. Rescuecom Corporation*, 2006 WL 414096 at *5 (D.N.J. 2006). Allin cannot meet his burden of showing that the forum selection clause here is unenforceable on any of the three grounds.

First, the forum selection clause was not the result of fraud or overreaching. Rather, it was part of a complex, negotiated agreement between two sophisticated parties represented by competent counsel. Allin cannot show fraud or overreaching. *Cf. Fleming & Hall, Ltd. v. Cope*, 30 F.Supp.2d 459, 464 (D.Del. 1998): "Both [the United States Supreme Court and the Third Circuit Court of Appeals] have found that the forum-selection clauses contained in contracts offered on a 'take-it or leave-it' basis where there is no negotiation whatsoever were valid."

Second, there is no public policy of this forum that would be violated by the enforcement of the forum selection clause. Rather, the public policy of this forum is to uphold the terms of contracts

freely entered into between the parties, and therefore enforcing the forum selection clause will advance the public policy of this forum.

Third and finally, litigating the dispute between Allin and Symbiot in Utah would not be "seriously inconvenient." In the APA Allin expressly "waive[d] any defense of inconvenient forum to the maintenance of any action or proceeding" in Utah. (APA, Motion Exhibit A, ¶10(o)(iii)). Accordingly, he cannot now claim that he would be inconvenienced by bringing his action in there rather than in Pennsylvania. Furthermore, Allin elected to sell a portion of his business assets to an entity based in Utah. After the sale, Allin became employed by Symbiot. It is not unreasonable that Allin would agree to litigate any claims against Symbiot in Utah, and Allin cannot show "serious inconvenience." *Cf. Barbuta*, 166 F.Supp.2d at 347: "Plaintiffs' argument that they 'do not possess sufficient resources to litigate this matter in Missouri' and that they cannot afford the time away from their business simply does not rise to the strong showing necessary to demonstrate that Missouri is "so gravely difficult and inconvenient that they will for all practical purposes be deprived of their day in court." (Brackets and citation omitted).

Under the facts and unambiguous language of the agreement entered into between Allin and Symbiot, the forum selection clause is valid and enforceable.

2. The forum selection clause applies to the APA and the Letter Agreement and all of Allin's claims asserted against Symbiot in this action

Allin asserts that Symbiot can be liable over to Allin because Symbiot "agreed that it would accept some liabilities and debts which Allin may be found to owe to Plaintiff . . . ." (Third-Party Complaint, ¶6). Presumably this "agreement" to which Allin refers is the Letter Agreement.

Symbiot expects that Allin will argue that he is not bound by the forum selection clause in the APA because he is asserting his claim under the Letter Agreement, and the Letter Agreement

- 8 -

does not expressly contain the forum selection clause. This argument is meritless because the forum selection clause of the APA clearly applies to any claim under the Letter Agreement.

The forum selection clause applies not only to the APA, but to any claim "arising out of or relating to" the APA. The forum selection clause expressly states that "[e]ach of the Parties submits to the jurisdiction of any federal court sitting in Salt Lake County, Utah *in any action or proceeding arising out of or relating to this Agreement*," (APA, Motion Exhibit A, ¶10(o)(i)), that "such jurisdiction shall be exclusive with respect to disputes arising under the Transaction Documents or the transaction contemplated thereby" (*id.*), and that "each Party also agrees not to bring or seek removal of any action or proceeding *arising out of or relating to this Agreement* in or to any other court." (*Id.*, ¶10(o)(i)).

The forum selection clause in the APA expressly applies not only to the APA, but to "disputes arising under the Transaction Documents or the transaction contemplated thereby" and to "any action or proceeding arising out of or relating to" the APA. In his third party complaint, Allin acknowledges that the Letter Agreement and his claims thereunder relate to the APA. Allin states the following in his third party complaint:

> 5. As part of the consideration exchanged in this asset sale to Symbiot, and/or in connection with that sale, Symbiot agreed and promised to accept certain existing liabilities of Allin which arose out of or related to Allin's snow management and/or removal work.
>
> 6. In that regard, Symbiot agreed that it would accept some liabilities and debts which Allin may be found to owe to [Heritage] in this litigation.

In these allegations, Allin acknowledges that the consideration for the Letter Agreement was the consideration found in the APA, and that the Letter Agreement was executed "in connection with" the sale and the APA. Similarly, in his brief in opposition to Symbiot's first motion to dismiss, Allin acknowledges that "*as part of the sale to Symbiot*, Symbiot agreed" to assume certain obligations in

connection with Heritage's claim against Allin. (Allin's brief in opposition to Symbiot's motion to dismiss, p. 9; emphasis added). Allin himself admitted that the Letter Agreement, and the claims he now brings against Symbiot, "arise out of or are related to" the APA.

Analysis of the facts of record results in the same conclusion. The Letter Agreement itself indicates it is part of and related to the APA. The Letter Agreement states that it "sets forth the agreement by and among [Symbiot and Allin] with respect to the Asset Purchase Agreement . . . dated as of November 3, 2004 among the foregoing parties." (Letter Agreement, Motion Exhibit B, p. 1). Similarly, the Letter Agreement states that "[i]n consideration of the mutual covenants and agreements set forth herein *and in the Purchase Agreement*, the undersigned agree as follows . . . ." (*Id.*; emphasis added). The Letter Agreement also modifies certain other provisions of the APA, including the amount of cash payable to Allin at the closing. (*Id.*, ¶5).

Allin and Symbiot entered into the Letter Agreement because the Heritage litigation did not arise until after the APA had been signed, and it was not addressed in the APA. The Letter Agreement was entered into to address the Heritage litigation (Haymore Affidavit, Motion Exhibit C, ¶6), and was an amendment of the APA. (Haymore Affidavit, Motion Exhibit C, ¶10). The Letter Agreement was dated on the date of the closing contemplated on the APA. (*Id.*, ¶8). Symbiot believed that the forum selection clause of the APA applied to the Letter Agreement. (*Id.*, ¶11). Thus, the facts of record all demonstrate the Letter Agreement, and any claims Allin asserts under it, "arise out of or relate to" the APA.

The court addressed a similar situation in *John Wyeth & Brother Limited v. Cigna International Corporation*, 119 F.3d 1070 (3d Cir. 1997). There the agreement between the parties contained a forum selection clause that provided that the "Agreement shall be governed by and construed in accordance with English law, and the English Courts shall have exclusive jurisdiction

*in relation to any dispute arising under or out of or in relation to* this Agreement." *John Wyeth*, 119 F.3d at 1072 (emphasis added). The court found the clause unambiguous and looked to the ordinary meaning of the language used. "To say that a dispute 'arises in relation to' the 1990 Agreement is to say that the origin of the dispute is related to that agreement, *i.e.*, that the origin of the dispute has some 'logical or causal connection' to the 1990 Agreement." *John Wyeth*, 119 F.3d at 1074 (brackets and deletion omitted). The court also recognized that it previously considered the "related to" language used in 28 U.S.C. §1334(b), which states that a district court "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or *arising in or related to* cases under title 11*,*" and found that that language "extremely broad."

> In interpreting the scope of 28 U.S.C. §1334(b), we explained that the reach of "related to" jurisdiction is extremely broad, extending to any action the outcome of which "*could conceivably have any effect on the estate being administered in bankruptcy.*" See Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original). More important, in comparing 28 U.S.C. §1334(b) (which reaches claims "related to" cases under title 11) to the general removal statute, 28 U.S.C. §1441(b) (which is limited to actions "arising under" federal law), we noted that the scope of "related to" jurisdiction is broader than the scope of "arising under" jurisdiction. *See Belcufine v. Aloe*, 112 F.3d 633, 637 n. 6 (3d Cir.1997).

*John Wyeth*, 119 F.3d at 1075. The court concluded that since there was a "logical or causal connection" between the claims for attorneys' fees of the plaintiff below and the agreement of the parties that contained the forum selection clause, the forum selection clause applied and should be enforced. *John Wyeth*, 119 F.3d at 1074.

> The district court properly granted summary judgment in favor of CIGNA. The proper forum for the adjudication of Wyeth's suit is a court in England. Wyeth and CIGNA are sophisticated business entities. Of their own accord, they entered into an agreement broadly vesting the English courts with exclusive jurisdiction over "any dispute arising in . . . relation to" the 1990 Agreement, and we hold them to the sweeping language that they adopted.

- 11 -

*John Wyeth*, 119 F.3d at 1076.

The forum selection clause in our case applies to "any action or proceeding arising out of or relating to" the APA. As the Third Circuit has recognized, this is very broad language and applies to any "action or proceeding" that "has some 'logical or causal connection'" to the APA. Plainly the Letter Agreement is "related to" and has a logical and causal connection to the APA. Similarly, all claims brought against Symbiot by Allin or Heritage have some connection to the APA, and it is through the APA that Symbiot and Allin entered into a relationship which gives rise to all the claims brought against Symbiot. Stated otherwise, had Symbiot and Allin not consummated the APA, the Letter Agreement would have never been signed, Symbiot would not have acquired any of Allin's assets, and Allin would have no basis for asserting any of the claims he now attempts to assert against Symbiot.

Since all of Allin's claims arise out of or are related to the APA, the forum selection clause in the APA controls. Under that clause, Allin "agree[d] not to bring or seek removal of any action or proceeding arising out of or relating to this Agreement in or to any other court" other than the Federal court sitting in Salt Lake County, Utah. Allin's attempt to bring this "action or proceeding" against Symbiot in this forum directly contravenes Allin's agreement. As a consequence, and as explained next, Allin's third party complaint should be dismissed.

    3.    <u>The Third Party Action should be dismissed and not transferred</u>

When a party brings an action in a forum which conflicts with the forum agreed to by the parties in a forum selection clause, the action can be transferred under 28 U.S.C. §1404(a), or it can be dismissed. Under Third Circuit law, there is "no doubt that a [Rule] 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another

federal forum." *Salovaara v. Jackson National Life Insurance Company*, 246 F.3d 289, 298 (2001). *See also W.G. Nichols, Inc. v. CSK Auto, Inc.*, 2001 WL 1486516 at *4 (E.D.Pa. 2001).

All the relevant factors weigh in favor of dismissing the third party action rather than transferring it or the entire case to Utah.

First, dismissing the third party action solves the dilemma of deciding whether Symbiot's right to have the third party action tried in Utah requires transfer of the entire action, including Heritage's claims, to Utah. It is likely Heritage does not want its action transferred to Utah. On the other hand, it is patently unfair to Symbiot that it would not be permitted to enforce the forum selection clause to which Allin and Symbiot agreed merely because Allin brought his claim against Symbiot as a third party claim rather than as a direct claim. By dismissing Allin's third party claim against Symbiot, Heritage's action can remain in the forum it chose, and Allin can decide whether he wishes to reassert his claim against Symbiot in Utah.

Second, Allin's contribution claim is not ripe, and may never ripen. Allin has taken the position in this action that he earned the entire Heritage payment or that Heritage's payment was non-refundable, and therefore Allin is not required to return any part of Heritage's payment. If Allin prevails on this claim, then Allin will owe Heritage nothing, and Allin will have no contribution claim against Symbiot. If the third party complaint is dismissed, and Allin then prevails against Heritage in this action, Allin will have no reason to pursue, or legal basis for pursuing, a claim for contribution against Symbiot in Utah. On the other hand, if the third party claim were transferred to Utah, Symbiot would be defending a contribution claim that would be moot if Allin prevails in the action brought against him by Heritage. Discovery has closed in this action and Heritage and Allin have cross-motions for summary judgment pending. Allin should know in the relatively near future whether he even has a contribution claim against Symbiot, and since Allin's contribution claim

would not accrue until then, Allin will not be prejudiced by the dismissal of the third party claim against Symbiot. Judicial resources and the resources of the parties will be conserved by dismissing the third party complaint rather than transferring it to Utah.

Third, if this action is transferred to Utah and proceeds, Symbiot may be compelled to assert compulsory counterclaims against Allin pursuant to Fed.R.Civ.P. 13(a). If Allin were to press his claims against Symbiot under the APA and the Letter Agreement, Symbiot may be compelled to assert all of its claims against Allin. The amount in controversy in Symbiot's claims against Allin will dramatically exceed the amount of Allin's contribution claim in this action. If the third party complaint is dismissed rather than transferred, Allin will have the opportunity to decide whether he is prepared to commence litigation in Utah and not only pursue his contribution claim against Symbiot, but also defend the substantial counterclaims Symbiot will be compelled to assert in response.

Although courts often transfer an action to the agreed-upon forum when enforcing a forum selection clause, in our case there are compelling reasons to dismiss the third party complaint rather than transferring either the entire action or the third party complaint to Utah. Accordingly, Symbiot requests that the court grant its motion to dismiss under Rule 12(b)(6) and dismiss Allin's third party complaint. In the alternative, if the court determines transfer is the preferred course (and Symbiot believes it is not as explained above), then Symbiot requests that the court transfer either this entire action, or the third party action, to the Federal district court sitting in Salt Lake City, Utah, pursuant to 28 U.S.C. §1404(a).

**B.     The third party complaint does not assert a claim for contribution or indemnity**

Fed.R.Civ.P. 14(a) provides that a third-party defendant may be joined "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." In addition to asserting a claim directly under the Letter Agreement, Allin asserts that Symbiot would be liable for any judgment entered in favor of Heritage "based upon the causes of action set forth in the civil action filed by Heritage against Symbiot at no. 06-00047 . . . ." (Third-Party Complaint, ¶8). This asserted ground for liability is improper and should be dismissed.[1]

"A third-party complaint may not set forth a claim that the third-party defendant is directly liable to the original plaintiff; it is limited to claims of secondary or derivative liability." *In re One Meridian Plaza Fire Litigation*, 820 F.Supp. 1492, 1496 (E.D.Pa. 1993). *See also*, *U.S. Small Business Administration v. Smith, Stratton, Wise, Agher & Brenn, LLP,* 2006 WL 305398 at *2 (E.D.Pa. 2006); *Siemens Westinghouse Power Corporation v. Dick Corporation*, 299 F.Supp.2d. 242, 248 (S.D. N.Y. 2004); *Con-Tech Sales Defined Benefit Trust v. Cockerham*, 715 F.Supp. 701, 704 (E.D.Pa. 1989).

In Heritage's separate action against Symbiot, Heritage asserts that Symbiot is directly liable to Heritage. This cannot be the basis for a third party complaint in this case because if Symbiot were directly liable to Heritage, Allin would not have a right to contribution against Symbiot. Rather, Symbiot would have a right of contribution or indemnity against Allin.

For example, in its action against Symbiot, Heritage asserts Symbiot is the "successor" of Allin, and therefore if Allin is liable to Heritage, Symbiot is also liable to Heritage. If Heritage could prove this (and it never will), it could never give rise to a claim by Allin that he is entitled to

---

[1] Allin's assertion of a third-party claim against Symbiot by merely incorporating allegations in a completely separate action is improper and inconsistent with Fed.R.Civ.P. 8(a).

contribution from Symbiot. Rather, the reverse would be true. If Symbiot were found liable for some debt owed by Allin, Symbiot would have the right to indemnity from Allin.

If Allin did have some right to contribution from Symbiot, that right must "arise out of or relate to" the APA, and it must be brought in Utah, not in this forum. However, even apart from the valid and enforceable forum selection clause, Allin's assertion that Symbiot could be liable to Allin on the grounds asserted in Heritage's separate complaint against Symbiot fails to assert a contribution claim under Rule 14(a) upon which relief could be granted. Since Allin's third-party claim that Symbiot could be liable to Allin on the grounds asserted in Heritage's separate complaint against Symbiot fails to assert a claim upon which relief can be granted, that portion of Allin's third-party complaint also should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

**III.    CONCLUSION**

Allin and Symbiot expressly agreed that any claim either party may have arising out of the agreement by which Symbiot acquired portions of Allin's business must be brought only in Utah. This agreement was reached by two sophisticated parties while represented by counsel, and is part of a complex, multi-million dollar transaction. Despite the fact that all of Allin's claims arise out of or relate to the agreement of the parties which dictates that any action or proceeding between them be brought only in Utah, Allin brought Symbiot into this action pending in Pennsylvania. This court should enforce the agreement between the parties, and because the filing of the third party complaint in this forum directly conflicts with the forum selection clause to which Allin agreed, this court should grant Symbiot's motion and dismiss the third party complaint.

    Respectfully submitted,

    THE McDONALD GROUP, L.L.P.
    By: /s/ Daniel J. Pastore
        Daniel J. Pastore
        Pa. I.D. No. 44619
        456 West 6th Street
        P. O. Box 1757
        Erie, PA 16507-0757
        Phone: (814) 456-5318
        Email: dpastore@tmgattys.com

    Attorneys for Third Party Defendants

f:\cfd\3100\3119 (symbiot)\memorandum of law renewed motion.doc