IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HERITAGE REALTY MANAGEMENT, INC., ) | Case No. CA 04 - 333 ERIE |
| Plaintiff ) | Judge Sean McLaughlin |
| ) | |
| v. ) | |
| ) | |
| JOHN ALLIN d/b/a ALLIN COMPANIES, ) | |
| Defendant-Third Party Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| SYMBIOT BUSINESS GROUP, INC. and ) | |
| SYMBIOT SNOW MANAGEMENT ) | |
| NETWORK, LLC, ) | |
| Third Party Defendants ) | TRIAL BY JURY OF 12 DEMANDED |

### DEFENDANT'S BRIEF IN OPPOSITION TO THIRD PARTY DEFENDANTS' RENEWED MOTION TO DISMISS

I.      PROCEDURAL HISTORY

On May 23, 2006, Third Party Defendants ("Symbiot") filed a renewed motion to dismiss, or in the alternative, a motion to transfer. This renewed motion did not contain any arguments which had not been raised previously in Symbiot's first motion which had been filed on April 10, 2006. Therefore, Defendant ("Mr. Allin") hereby incorporates by reference the brief which he filed in opposition to Symbiot's original motion to dismiss, as if said brief was set forth fully herein. A supplement of Mr. Allin's original brief is set forth below.

II.	DISCUSSION

      A.  The Letter Agreement of November 22, 2004 Has No Forum Selection Clause

      Symbiot does not dispute that its obligations to indemnify Mr. Allin with respect to the lawsuit filed by Heritage are set forth in the Letter Agreement of November 22, 2004.  These indemnity obligations are not found, nor even mentioned, anywhere in the Asset Purchase Agreement of November 3, 2004.  In fact, Heritage did not file its lawsuit until November 15, 2004, almost two weeks after the Asset Purchase Agreement had been signed.  Symbiot agrees that this "separate [letter] agreement" was subsequently signed by Symbiot and Mr. Allin specifically to address the indemnity obligations for the Heritage lawsuit.  *Symbiot Memorandum In Support of Renewed Motion, pg. 2.*  It is also clear that the Letter Agreement's indemnity obligations are so distinct from the Asset Purchase Agreement that there will be no occasion to refer to the Asset Purchase Agreement to resolve the substantive issues raised in this action concerning Symbiot's obligations to Mr. Allin.

      It also cannot be disputed that the Letter Agreement does not contain any forum selection clause.  Moreover, the Letter Agreement does not refer to nor incorporate by reference the forum selection clause of the Asset Purchase Agreement.  It is telling that where the parties actually intended to have the Asset Purchase Agreement govern the Letter Agreement, the parties expressly referred to and incorporated the relevant portions of the Asset Purchase Agreement. *See, Letter Agreement, pg. 1* ("Capitalized terms used but not defined in this Letter Agreement

2.

have the meaning set forth in the Purchase Agreement"). Thus, where the parties intended for the terms of the Asset Purchase Agreement to apply, the parties expressly stated this intention and left no question about which clauses were to be incorporated. The fact that there are specific references in the Letter Agreement to the incorporation of *some* of the terms of the Asset Purchase Agreement would establish that the parties did not intend to incorporate those terms which are not so identified.

Nevertheless, Symbiot argues that the indemnity obligations contained within the Letter Agreement are controlled by the forum selection clause of the earlier Asset Purchase Agreement because these indemnity obligations in a very general sense "arise out of or relate to" the Asset Purchase Agreement. In fact, Symbiot argues that the Letter Agreement is one of the "Transaction Documents" which expressly fall under paragraph 10 (o)(I) of the forum selection clause. *Symbiot Memorandum In Support of Renewed Motion, pg. 9.*

However, even if these two agreements are read together, it is not enough that the Letter Agreement relates to the asset sale. By its terms, the forum selection clause of the Asset Purchase Agreement is not so broad as to apply to this lawsuit. Symbiot's arguments overlook the specific definitions of the Asset Purchase Agreement, improperly collapse the separate and distinct grammatical structure of the forum selection clause and thus overstate the limited reach of the clause.

B.  Law Governing Interpretation of the APA's forum selection clause

The forum selection clause must be interpreted in accord with the legal principles governing contracts in general.  In this regard, the case of <u>John Wyeth & Brother, Ltd. v. CIGNA International Corp.</u>, 119 F.3d 1070 (3rd Cir. 1997) cited by Symbiot, provides the general framework for interpretation of such clauses, although it is clearly distinguishable on its particular facts.  In <u>Wyeth</u>, the plaintiff had liability insurance coverages for product liability claims under various policies of insurance.  The plaintiff's insurers refused to pay for ongoing defense costs incurred by plaintiff in a multitude of claims arising from the particular drug sold by the plaintiff.  The plaintiff and its insurers then signed an agreement to split the ongoing costs at a fixed percentage, without waiving any defenses under the various policies of insurance.  This agreement contained a forum selection clause which required "any dispute arising under or out of or in relation to this Agreement" to be heard in the English courts.

After the agreement was signed, one of the insurers tendered to the plaintiff its full policy limits and thus terminated any obligation to provide a defense to plaintiff for those claims.  The plaintiff then filed suit in an attempt to shift all defense costs to one of the other insurers who had provided liability coverage on an excess basis.  This insurer refused to pay any more than the share of costs required by the written agreement.  The District Court ruled that the plaintiff's dispute was a dispute over whether the insurer was obligated to pay any funds in excess of those fixed by the written agreement.  As such, the lawsuit was subject to the forum selection clause of that agreement.

The United States Court of Appeals for the Third Circuit affirmed by applying general principles of contract interpretation.  In fact, the significance of Wyeth is that it makes it clear that the application of any forum selection clause is entirely dependent upon the language of that clause.

> This is a contract interpretation case.  Therefore, whether or not a forum selection clause applies depends on what the *specific clause at issue* says.  Drawing analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue.

Id. 119 F.3d at 1075.  (emphasis in original).  See also Zukaites v. Land-Cellular Corp., 424 F. Supp. 2d 824 (W.D. Pa. 2006) (the parties' intent is deemed embodied in the writing itself).[1]

The plaintiff's claims in Wyeth concern the very issue which was expressly addressed by the parties' agreement, *i.e.* the amounts to be paid for ongoing obligations of defense.  Therefore, since the origin of that dispute was the parties' payment agreement, the dispute fell within the language of the forum selection clause of that agreement.

---

[1] Symbiot's submission of the affidavit of its current in-house counsel (Attorney Doug Haymore) does not provide relevant evidence of Symbiot's supposed "intent."  First, as stated above, the parties' intent is to be gleaned from the written contract not from statements from in-house counsel.  Second, Attorney Haymore did not represent Symbiot in the asset purchase and he would have no first-hand knowledge of Symbiot's alleged "intention." *Affidavit, ¶¶3-4*.  The absence of any admissible evidence of Symbiot's intent is made conspicuous by Symbiot's failure to submit an affidavit from the person who signed the contracts and its failure to submit any supporting documents which were prepared contemporaneously with the signing of the contracts.

In contrast, Symbiot's indemnity obligations arise out of, or under, the Letter Agreement. There is no claim nor any assertion that the indemnity obligations arise from any provision or any substantive clause of the Asset Purchase Agreement. The contents of the Asset Purchase Agreement will play no role in determining the indemnity obligations under the Letter Agreement. Moreover, the forum selection clause of the Asset Purchase Agreement is narrowly drafted to apply to disputes arising under the "Transaction Documents or the transaction." The Letter Agreement arises neither under the transaction documents or the transaction. Therefore, the forum selection clause of the Asset Purchase Agreement does not apply to the claims brought under the Letter Agreement.

### C. The APA's Forum Selection Clause Does Not Apply

#### 1. Three Operative Components of Clause

A close reading of the forum selection clause establishes that it does not apply to Symbiot's indemnity obligations under the Letter Agreement. The forum selection clause has three distinct operative components relevant to the issues presented here. First, the parties' consented to the exercise of personal jurisdiction by the federal courts sitting in Salt Lake County, Utah regarding "any action or proceeding arising out of or relating to this Agreement." Second, the parties agreed that the Utah federal court has subject matter jurisdiction and thus can hear and finally determine "all claims in respect of the action or proceeding." Neither of these provisions, however, express an agreement that jurisdiction was to be exclusive to the Utah federal courts.

See Zukaites, supra (an agreement which states that the parties agree that a particular forum is appropriate and that they will irrevocably submit to jurisdiction in that forum, creates a permissive, not exclusive, forum); Boutari and Son v. Attiki Importers, 22 F.3d 51, 52-53 (2d Cir. 1994) (to state that a particular locale "shall" have jurisdiction, creates a permissive forum).

Third, and with regard to the critical issue of exclusivity of jurisdiction, the parties agreed that only those "disputes arising under the Transaction Documents or the transaction contemplated" by the Asset Purchase Agreement shall be exclusively heard in the federal court sitting in Salt Lake County, Utah. (emphasis added).[2] Therefore, it is clear that with respect to exclusive jurisdiction, the parties narrowed the universe of claims to include only those "arising under the Transaction Documents or the transaction" contemplated.

2. Arising Under Transaction Documents and the Transaction

Contrary to Symbiot's suggestion, "Transaction Documents" are expressly limited to include only the Asset Purchase Agreement and those "agreements attached as Exhibits [thereto] or required pursuant to the terms [thereof] to be delivered at Closing." *Asset Purchase Agreement, ¶1 Definitions*. The Letter Agreement was neither an exhibit to the Asset Purchase Agreement nor was it one of the documents required by the Asset Purchase Agreement to be delivered at closing. For a listing of exhibits see Asset Purchase Agreement, pg. iv; for a listing of

---

[2] An exception to this exclusivity clause are disputes arising from a breach of the non-compete and non-disclosure restrictions of the Asset Purchase Agreement. Those disputes may be filed in the jurisdiction where the breach occurs. *Asset Purchase Agreement, ¶7(f)*.

the documents required to be delivered at closing, see Asset Purchase Agreement, ¶2(f) <u>Deliveries at the Closing</u>; ¶6 <u>Conditions to Obligations to Close</u>.  Of course, it makes perfect sense that the Letter Agreement was not identified as an exhibit, and thus is not a "Transaction Document," because the need to address the indemnity issues arising from Heritage's subsequently filed lawsuit was not even contemplated at the time of signing the Asset Purchase Agreement.

Moreover, Symbiot's indemnity obligations under the Letter Agreement do not arise "under . . . the transaction" contemplated.  This phrase of the Asset Purchase Agreement must be interpreted to be limited to a universe of disputes which is a subset of the universe of all of the disputes which conceivably may relate in some way to the asset sale.  If the parties intended for this phrase to have a broader and an all-encompassing scope, then certainly it would have been superfluous for the parties to also say, in the same sentence, that the forum selection clause governs the much smaller subset of all disputes which arise "under the Transaction Documents." In fact, these two phrases should be read *in pari materia* so that the phrase "under . . . the transaction" means to only refer to events and obligations specifically related to the closing.

    3.  <u>Agreement Not to Bring Action</u>

Similarly, the clause which states that "each party also agrees not to bring or seek removal of any action or proceeding arising out of or relating to this Agreement in or to any other court" does not apply to the third party claim filed by Mr. Allin against Symbiot. In this regard, it is important to note the procedural posture of Mr. Allin's joinder of Symbiot. This joinder was filed as a defensive response to the action originally filed by Heritage. See F.R.C.P. 14(a) ("at any time after commencement of the action a defending party . . . may cause a summons and complaint to be served upon" a third party defendant)(emphasis added). Thus, "the action" was commenced by Heritage, not Allin. Likewise, the forum for the resolution of this dispute was not selected by Mr. Allin but it was selected by Heritage.

In this regard, we should also be mindful of the fact that the differences between a contractual indemnity claim and a stand-alone breach of contract matter support an interpretation of the forum selection clause which would permit Mr. Allin's joinder of Symbiot. By definition, in an indemnity claim there will always be an underlying action. To promote judicial economy and to efficiently resolve these related claims, the indemnity claim often will be joined with the underlying action. In fact, the wisdom and efficiency of such a joinder of issues led to the formulation of Rule 14(a). Thus, there is an inherent logic in reading the forum selection clause so that it would not deny the parties of the ability to enjoy these benefits of joinder.

Clearly, it would make little sense to require two different courts to resolve these inter-related claims. In fact, by objecting to the consolidation of this matter with the action filed

by Heritage against Symbiot (No. 06-47),[3] Symbiot is now demanding that these three related matters of litigation be tried separately in two different courts, with each matter then having its own independent schedule and with each unnecessarily creating a potential for conflicting rulings. It cannot be disputed that this would not an efficient use of the resources of the court or of the parties.

Therefore, the forum selection clause of the Asset Purchase Agreement is not as broad nor as sweeping as Symbiot now contends. By its own terms, that portion of the forum selection clause which allegedly makes Utah the exclusive jurisdiction for certain disputes does not control the indemnity dispute between Allin and Symbiot arising under the Letter Agreement of November 22, 2004 because that dispute clearly does not "aris[e] under the Transaction Documents or the transaction" contemplated. It arises solely under the Letter Agreement.

III.     CONCLUSION

Symbiot's indemnity obligations to Mr. Allin for Heritage's claims arise out of, or under, the Letter Agreement. There is no claim nor any assertion that these indemnity obligations arise from any provision or any substantive clause of the Asset Purchase Agreement. The contents of the Asset Purchase Agreement will play no role in determining the indemnity obligations under the Letter Agreement. Since the Letter Agreement has no forum selection

---

[3] Heritage's action against Symbiot is based, in part, upon Symbiot's agreement to assume "certain liabilities of Allin, including Allin's debt to Heritage." *Complaint, ¶53.*

clause and since the Letter Agreement does not refer to the forum selection clause of the Asset Purchase Agreement, that clause has no application here.

                                                Respectfully submitted,

                                                ELDERKIN, MARTIN, KELLY & MESSINA

                                                By    /s/ Craig A. Markham
                                                     Craig A. Markham, Esquire
                                                     Attorney for Defendant
                                                     150 East Eighth Street
                                                     Erie, Pennsylvania 16501
                                                     (814) 456-4000