IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERITAGE REALTY MANAGEMENT,
INC.,
    Plaintiff

    v.        CIVIL ACTION NO. 04-333 ERIE

JOHN ALLIN d/b/a ALLIN
COMPANIES and SNOW MANAGEMENT
GROUP,
    Defendant

HEARING ON MOTION TO EXCLUDE EVIDENCE OF
ALLEGED TIME AND EXPENSE/SETOFFS

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Wednesday, January 11, 2006.

APPEARANCES:
    NEAL R. DEVLIN, Esquire, appearing on behalf of
    the Plaintiff.

    CRAIG A. MARKHAM, Esquire, appearing on behalf

of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1           P R O C E E D I N G S

2

3           (Whereupon, the proceedings began at 1:30 p.m., on

4   Wednesday, January 11, 2006, in Courtroom C.)

5

6           THE COURT:  We have a motion to exclude evidence of

7   alleged time and expense/setoffs.  Why isn't this a weight

8   issue?

9           MR. DEVLIN:  Your Honor, the reason we filed the

10  motion and why we believe it's not a weight issue is based upon

11  how we've come to this point.  Not to rehash, please feel free

12  to cut me off, but as you will recall, there was some initial

13  discovery, we had a settlement conference with you, at which

14  Mr. Allin was present. During that conference the focus was on

15  the expenses that he's claiming are a setoff to the amount

16  Heritage has paid him. We explained that we had summaries

17  based upon that. There is a whole box of documents, but the

18  majority of them are these requests for proposals. So it's

19  really the supplement. And he indicated he thought there was

20  other source documentation he was going to get --

21         THE COURT: That would substantiate the amount of

22  setoffs that were being claimed?

23         MR. DEVLIN: Correct, your Honor. We then went

24  through -- and he was going to get those to us in a certain

25  period of time, there was an extension, then a motion to

3

1  compel. During that argument on the motion to compel, though

2  Mr. Lanzillo was here, where it was discussed the possibility

3  that if those documents existed, but they weren't produced,

4  there would be a sanction in the exclusion of all evidence.

5         THE COURT: In other words, I went back and read it.

6  What I was trying to prevent from happening, in the event they

7  said we don't have them and all of a sudden they show up at

8   trial, as a sanction I was going to preclude the proof.

9         MR. DEVLIN:  Okay.  Correct, your Honor, that's how

10  I understood your order as well.

11        THE COURT:  But not to interrupt you -- in other

12  words, I actually say in there they can't be faulted for not

13  producing what they don't have.  They now say they've made a

14  search and don't have it.  Your position, I take it, remains

15  that as a factual matter, may cast even additional doubt as to

16  whether it can be substantiated.  But it isn't clear what you

17  want me to do right now?

18        MR. DEVLIN:  And, your Honor, here's why we filed

19  the motion and what we'd like you to do right now.  I do agree,

20  your Honor, that your order was that if the documents did not

21  exist and they would be required to rely upon their testimony,

22  there would not be an overarching sanction of producing what

23  you don't have.  Here's the problem we had when we received the

24  records.  The records are a very similar summary.  But a couple

25  of them, specifically with request to Mr. Allin, Mr. Vernon,

4

1   and at least two or three other unidentified people, have a

2   more specific break out of time.  The original records just

3   show a block of time, 200 hours.  Then you have a more specific

4   break out for -- let's take Mr. Vernon, for example.  There is

5   no -- clearly something that led to that more specific break

6   out.  But we don't know what that is.  If it is going to be

7   testimony, we noticed the deposition of Mr. Vernon, but were

8   told -- by Mr. Markham, we just had actually a conversation

9   about it, has been in conversation with him, but he's not in a

10  position to produce him.  It appears he's in Connecticut.

11          THE COURT:  He's no longer an employee?

12          MR. DEVLIN:  Yes, apparently all of the individuals

13  who were noticed are no longer employees.

14          THE COURT:  Let me just interrupt -- Mr. Markham,

15  did I see in the paper was the company sold?

16          MR. MARKHAM:  It was sold and Mr. Allin was fired,

17  yes.

18          THE COURT:  So we're even farther down the road now.

19          MR. MARKHAM:  Unfortunately.

20          THE COURT:  Well, we'll talk about the upshot of

21  that in a minute.

22          MR. DEVLIN:  And, your Honor, the problem we now

23  have is that there is this more specific break out as to some

24   individuals --

25          THE COURT: Is there still an Allin Companies, is it

5

1  still called Allin Companies, do you know?

2          MR. MARKHAM: There is a local outfit still called

3  Allin Companies, principally doing local landscaping and local

4  snow removal.

5          THE COURT: All right.

6          MR. MARKHAM: Allin Companies is a fictitious name

7  of Snow Management Group.

8          THE COURT: So, anyway, getting back to the point

9  here.

10         MR. DEVLIN: Your Honor, with respect to every one

11  on there, other than John and Peggy Allin, we have noticed

12  depositions. Not everybody on that list, but those people that

13  sort of had a big chunk of time. We've been told that Mr.

14  Allin is not in a position to produce those people for us to

15  depose. So we are then left back in the very position that

16  your Honor, we believe, had contemplated in that motion to

17  compel, that we have a summary of information, we don't have

18   any original source documentation.  And as to testimonial

19   support for it, we've now been informed we're not able to get

20   the depositions, absent tracking these people down and

21   subpoenaing them, if they're even appearing within this

22   jurisdiction.  So it's for that reason that we're asking at

23   this point in time --

24          THE COURT:  Well, let me ask you this.  There are

25   some people, John Allin and his wife, who are around here and

6

1   who are available to be deposed, correct?

2          MR. DEVLIN:  Correct, your Honor.

3          THE COURT:  I take it that their work, in part,

4   according to the defendant's theory, represents a portion of

5   the setoff claimed?

6          MR. DEVLIN:  Yes, your Honor.

7          THE COURT:  These other two or three individuals who

8   are no longer -- obviously, they're not employees, the company

9   has been sold, but who are no longer around here and subject to

10   Mr. Markham's control, do you know where they are?

11          MR. DEVLIN:  I don't, your Honor.  I know that Mr.

12  Markham has spoken to Jeff Vernon in Connecticut. As to the

13  other individuals, I don't know where they are. And I'll let

14  Mr. Markham speak as to whether he knows or not. But I have

15  not been told where they are.

16      THE COURT: Well, were more specific time records as

17  to these individuals supplied but without what you feel is the

18  supporting documentation?

19      MR. DEVLIN: As to Jeff Vernon, yes. As to Jeff

20  Vernon, we originally had a block of time. We now have a break

21  out of dates, and we don't know where that is coming from. And

22  there are other -- your Honor, I won't pull it out now, with

23  the format it's difficult to tell where the break off is.

24  There are two, possibly three other summaries that don't

25  indicate the individual's name, but indicate a more specific

7

1  break out of time. So we don't even know who those individuals

2  are. But it's pretty clear that they're not John Allin or

3  Peggy Allin. So we're stuck in a position where we have an

4  expense claim, no source documentation to support it and no

5  ability to delve into testimony of these people supposedly that

6  did the work. For that reason we're asking, your Honor --

7        THE COURT: Still at time of trial it's going to be

8  their burden to substantiate it. I mean, why is this different

9  than -- why isn't this a garden-variety situation that often

10 happens, where people who are employees no longer are, and you

11 got to go -- in this case the defendant, but attempting to

12 establish a counterclaim, which he's functionally the

13 plaintiff, needs to either go track him down and wheel him in

14 or suffer the consequences. What are you worried about?

15       MR. DEVLIN: Your Honor, in all candor I do agree

16 that if our motion is denied, we'll probably be back up here on

17 a motion in limine or something along those lines prior to

18 trial at the close of discovery. What we're worried about now

19 is as the sequence of this has come, there have been

20 representations made by Mr. Allin that these things existed.

21 He's produced a summary of records that must be based upon

22 something. Now, discovery actually closes today, which is

23 something I know, I'm sure Mr. Markham and I want to discuss

24 with the court as well. But we're at the close of discovery,

25 we have none of the source documentation that we asked for, and

1  we've been told the individuals who we are planning on deposing

2  are not, they can't produce those individuals.  So we don't

3  know, quite frankly, what we're going to be hit with

4  afterwards.  And I'm not saying, I don't think anyone is trying

5  to hide anything from us, but at this point in time discovery

6  is nearing an end, there is no support for any of this.  Now,

7  based upon what happened at the motion to compel, that's why we

8  phrased it as a motion to exclude.  But I do agree with your

9  Honor that if the court denies that motion, I'll be back here

10  making a very similar argument on a motion in limine.

11          THE COURT:  Isn't the time to make a motion in

12  limine at trial -- I mean by that time we will know, because of

13  the passage of time that will have gone by, who was deposed,

14  what happened, who's on the witness list, that's all in the

15  future?

16          MR. DEVLIN:  I agree, your Honor.  The reason we

17  filed the motion and did not wait for that is based upon the

18  representations Mr. Allin made and how this came about.

19          THE COURT:  All right, let me talk to Mr. Markham

20  for a minute.  Give me your position in a nutshell here?

21      MR. MARKHAM: Well, it's simply this. In response

22  to the specific motion for sanctions, it's clear we produced

23  everything we could find. Mr. Allin, when he was here, had

24  indicated that he thought the records existed. He was

25  incorrect, he searched and his staff has searched, and only

9

1  found one other document, a multi-page document, which has been

2  produced and given to plaintiff's counsel. Which is a summary,

3  much like the previous summaries given. It was created a long

4  ago, it wasn't created recently, which provides information

5  which came from, basically, my client's review and

6  recollections of what had transpired. There are no other

7  records of a source nature or really anything that's responsive

8  to their requests --

9      THE COURT: Would it be accurate to say in general,

10  that the time summaries that had been supplied, the hours

11  worked, what was done, were the creation of a collective

12  memory, as opposed to any hard documentation?

13      MR. MARKHAM: For the most part, that's correct.

14  There are some documents that we were going off of, like

15  airplane ticket receipts, things of that nature, which kind of

16  placed them in time for certain events.  But for the most part,

17  besides that --

18          THE COURT:  It was a reconstruction by memory?

19          MR. MARKHAM:  By memory.

20          THE COURT:  Doesn't that tell you a lot right there,

21  I mean it's a reconstruction by memory.  It may not be the best

22  way to try to prove your case but it's a weight issue, isn't

23  it?

24          MR. DEVLIN:  And, your Honor --

25          THE COURT:  If that's all there is, that's all there

                                10

1  is?

2          MR. DEVLIN:  I agree, your Honor.  However, if it's

3  a collective memory, the only people who apparently we're going

4  to be able to depose are Mr. Allin and Mrs. Allin, I'd like to

5  know if there's anyone else in that collection.

6          THE COURT:  Well, we're looking down the road,

7  but -- if this thing keeps jumping along toward trial, what

8  about these other individuals that are all spread into the four

9   winds, are you going to bring them in to substantiate your

10  claims?

11          MR. MARKHAM:  I don't think so.  The memories we're

12  talking about are the memories of the people here.  We didn't

13  talk to --

14          THE COURT:  In other words, Mr. and Mrs. Allin, if

15  you will, not only reconstructed their own time, but based on

16  their personal observations, if you will, reconstructed the

17  other folk's time, is that right?

18          MR. MARKHAM:  That's correct.

19          THE COURT:  That's how the case would come on, it's

20  not your intention to bring these people in as live witnesses

21  in support of your setoff claim, is that right?

22          MR. MARKHAM:  I think that's correct.  The only

23  potential witness will be Jeff Vernon, only because he was more

24  intimately involved in some of the preparation work.  But

25  beyond that, even that's speculation.


                              11


1           THE COURT:  Is he the fellow who's in Connecticut?

2           MR. MARKHAM:  He's in Connecticut.  I had indicated

3   to Mr. Lanzillo that all of these people are not within our

4   control, if he wanted, we could try to contact them or act as a

5   liaison.

6         THE COURT:  But if you're not going to bring them

7   in, I don't see the point of anybody going off to depose them.

8         MR. MARKHAM:  Well, that was up to him.  I just said

9   if he wanted to do that, we'd try to help him.

10        THE COURT:  All right, let me do a quick order and

11  then I want to talk to you about a few things.  This an order.

12                    ORDER

13        With respect to the Motion to Exclude Evidence of

14  Alleged Time and Expense/Setoffs, based upon the discussion

15  we've had here today, the motion is denied.

16        Now, let's go off the record.

17        (Discussion held off the record.)

18        THE COURT:  We're back on the record, what about

19  discovery?

20        MR. DEVLIN:  Well, your Honor, we have depositions

21  scheduled right now.  I think the discovery cutoff is today or

22  tomorrow.

23        MR. MARKHAM:  I think it's today.

24        MR. DEVLIN:  Given this motion, we had held off on

25  deposing Mr. and Mrs. Allin because we didn't know what we

                                12

1  would be inquiring into.  We now have their depositions

2  scheduled, I believe for the 21st and 23rd now or something

3  around there.  And Craig has depositions scheduled immediately

4  before that by video.  So what I was going to request, your

5  Honor, would be a 20-day extension of all deadlines.  I think

6  that would accommodate what we were planning on doing.

7         THE COURT:  All right.  Does that wrap up yours,

8  too?

9         MR. MARKHAM:  I believe it will.  I'm expecting two

10  witnesses that I want to depose, would be in the universe of

11  people I need to speak to.

12         THE COURT:  Is there going to be summary judgment

13  filed in this case?

14         MR. DEVLIN:  I believe there will be, your Honor, I

15  think we will.

16         THE COURT:  All right.  We'll extend discovery for

17  20 days, all other relevant scheduling dates are moved

18  accordingly.

19        (Discussion held off the record.)

20

21        (Whereupon, at 1:46 p.m., the proceedings were

22   concluded.)

23

24                    - - -

25



13

1              C E R T I F I C A T E

2

3

4     I, Ronald J. Bench, certify that the foregoing is a

5   correct transcript from the record of proceedings in the

6   above-entitled matter.

7

8

9

10   _____

11   Ronald J. Bench

12

13

14

15

16

17

18

19

20

21

22

23

24

25