IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERITAGE REALTY MANAGEMENT,
INC.,
    Plaintiff

    v.        CIVIL ACTION NO. 04-333 ERIE

JOHN ALLIN d/b/a ALLIN
COMPANIES and SNOW MANAGEMENT
GROUP,
    Defendant

    v.

SYMBIOT BUSINESS GROUP, INC.,
et al.,
    Third-Party Defendants

PRETRIAL MOTIONS
(COURT ORDERS)

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Wednesday, June 21, 2006.

APPEARANCES:
_____

    NEAL R. DEVLIN, Esquire, appearing on behalf of the Plaintiff.

    CRAIG A. MARKHAM, Esquire, appearing on behalf of the Defendant.

    DANIEL J. PASTORE, Esquire, appearing on behalf of the Third-Party Defendants.

Ronald J. Bench, RMR - Official Court Reporter

2

1    P R O C E E D I N G S

2

3    (Whereupon, the following excerpt of proceedings

4  occurred on Wednesday, June 21, 2006.)

5

6    (Recess from 11:03 a.m.; until 11:12 a.m.)

7

8    THE COURT:  These are going to be orders.

9        ORDERS

10    Presently pending before the court are cross-motions

11  for summary judgment filed by the plaintiff and defendant.

12  The background is well-known to the parties, so I am somewhat

13  abbreviated here in sketching out the operative facts.  But,

14  basically, the parties entered into a contract on

15  October 12, 2004.  Under the terms of which Allin agreed to

16  "provide all services required to manage, supervise and

17  assure," the performance of all "snow and ice piling, snow

18  blowing, shoveling, salting, sanding and snow and ice removal

19  operations."  On October 13, 2004, the record reflects that

20  Heritage paid an initial installment to Allin in the amount of

21  $340,482.90.  Section 17 of the contract authorized Heritage to

22  "terminate the contract by giving Allin 10 days written

23  notice."  Heritage had the right under the contract to

24  terminate it if Allin was "in default with respect to any of

25  its obligations or without any cause whatsoever."  The contract

3

1  further provided that in the event of a termination, Allin was

2  to be paid "for all work or services performed and equipment

3  and materials supplied to the date of termination."

4  On November 3, 2004, Heritage issued a written notice to Allin

5  that it was terminating the contract and demanded the return of

6  $340,482.90.

7           The plaintiff argues that it is entitled to summary

8  judgment on the basis that it terminated the contract with

9  Allin before any work was performed.  And it is entitled to

10  reimbursement in the full amount of the money that it paid out.

11  Plaintiff also contends that Allin breached the contract when

12  it entered into third-party contract with Symbiot.  The

13  defendant counters that under the plain language of Section 17

14  of the contract, the plaintiff is not entitled to seek a refund

15  from the defendant in any amount if the contract is terminated.

16  And, alternatively, the defendant argues that there are

17  material issues of fact as to the amount and value of work and

18  services which it performed and as a result of which would be

19  entitled to an offset.

20          Paragraph 17 of the contract provides in pertinent

21  part:

22          "Heritage shall have the right to terminate this

23  agreement by giving contractor 10 days written notice in the

24  following events:  (a) Contractor is in default with respect to

25  any of its obligations under this agreement; (b) If any

                                4

1  property or properties covered by this contract scheduled to be

2  sold; (c) Without any cause whatsoever, provided, in all such

3  events, Heritage shall pay contractor for all work or services

4  performed and equipment and materials supplied to the date of

5  termination."

6           As stated in Steuart_v._McChesney, 498 Pa. 45:
                 _____ __ _____

7           "It is well established that the intent of the

8  parties to a written contract is to be regarded as being

9  embodied in the writing itself.  And when the words are clear

10  and unambiguous, the intent is to be discovered only from the

11  expressed language of the agreement."  Citing cases.  "When a

12  written contract is clear and unequivocal, its meaning must be

13  determined by its contents alone.  It speaks for itself and a

14  meaning cannot be given to it other than that expressed.  When

15  the intention of the parties is clear, there is no need to

16  resort to extrinsic aids or evidence."  At page 49.

17            It's also Hornbook law that "when there has been a

18  breach of contract, damages are awarded in order to place the

19  aggrieved party in the same position he would have been had the

20  contract been performed.  The theory behind this philosophy is

21  based on an attempt to make the non-breaching party whole

22  again, not to provide him a windfall.  That's Northeastern

23  Vending_Co._v._PDO,_Inc., 414 Pa. Supra. 200 (1992).

24          Having carefully considered the matter and

25  specifically subparagraph C in Section 17 of the contract,

5

1   and after oral argument, I am of the view that that particular

2   provision of the contract is clear and unambiguous within the

3   meaning of the previously-described cases.  In other words, if

4   the contract is terminated during a given year, Heritage's

5   obligation is to pay "for all work or services performed and

6   equipment and materials supplied to the date of termination."

7   There is no indication in the plain language of the contract,

8   in fact, in my view, it would be nonsensical to read into it a

9   provision which, in essence, would require Heritage to forfeit

10  in its entirety any installment payment made under the contract

11  regardless of the amount of work that had been performed.

12  Otherwise stated, that interpretation would create a windfall.

13          That said, however, I'm of the opinion that there

14  are material issues of fact as to the nature, value and perhaps

15  timing of services performed by Allin relative to the issue of

16  offset, such that summary judgment is inappropriate.

17  Consequently, the plaintiff's motion for summary judgment is

18  denied.

19        And largely for the same reasons that I just

20  articulated, the defendant's summary judgment, cross-motion for

21  summary judgment, is denied.

22        There is also pending before the court a motion to

23  strike under Rule 14(a).  Motion to strike that is on behalf of

24  Symbiot Business Group.  In determining whether a motion to

25  strike should be granted, the court considers, among other

6

1  things, the prejudice to the plaintiff, the prejudice to the

2  third-party defendant, the reasons for the delay and whether

3  the joinder would delay or complicate the trial.  United_States

4  v._New_Castle_County, 111 F.R.D. 628 (D.Del. 1986).

5        Examining each of those factors, I find, number one,

6  that given the stage of this case and the fact that we are, as

7  between the original plaintiff and the original defendant, we

8  are within striking distance of trial, the plaintiff would be

9  prejudiced by a delay.  Because it would inevitably require

10  additional discovery for Symbiot to come up to speed.  The

11  third-party defendant, Symbiot, even if I were to push the

12  entire case forward, would be prejudiced in a way that could

13  not really be remedied, in that it had not been a participant

14  in all of the discovery that had gone before.  Thirdly, given

15  the nature of the theory of joinder, although, this isn't a

16  major point and Symbiot could have been joined at any time,

17  particularly at an earlier point in time.  And, finally, it

18  seems to me, the joinder of Symbiot not only would delay the

19  trial, for reasons that I've just indicated, namely, the need

20  to extend discovery, but in my view would complicate the trial

21  because the battle between Allin and Symbiot grows out of an

22  entirely different factual matrix and legal theory than the

23  battle between Heritage and Allin.  So the motion to strike is

24  granted.

25         With respect to the motion to consolidate the

7

1  actions, in my view the consolidation of the actions is

2  inappropriate because these cases, as was pointed out in the

3   papers, are really at opposite ends of the litigation time

4   line.  And to join them now at the hip would unduly delay, and

5   I think inappropriately delay the earlier case.

6         So the motion to strike -- to clarify then, if I

7   didn't already say this, the summary judgment motions are

8   denied; the motion to strike is granted; and the motion to

9   consolidate is denied.

10

11         (Whereupon, at 11:25 a.m., the proceedings were

12   concluded.)

13

14                    - - -

15

16

17

18

19

20

21

22

23

8

1            C E R T I F I C A T E

2

3

4       I, Ronald J. Bench, certify that the foregoing is a

5   correct transcript from the record of proceedings in the

6   above-entitled matter.

7

8

9

10

11   _____

12   Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25