IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HERITAGE REALTY MANAGEMENT, INC., | ) Docket No. 04-333 ERIE |
| | ) (Judge Sean J. McLaughlin) |
| Plaintiff | ) |
| | ) ELECTRONICALLY FILED PLEADING |
| vs. | ) |
| | ) PLAINTIFF'S BRIEF IN SUPPORT OF |
| | ) MOTION IN LIMINE TO PRECLUDE |
| JOHN ALLIN d/b/a ALLIN COMPANIES and SNOW MANAGEMENT GROUP, | ) EVIDENCE OR ALLEGED PRE-CONTRACT EXPENSES |
| | ) |
| | ) Filed on behalf of: Plaintiff, Heritage Realty |
| Defendant | ) Management, Inc. |
| | ) |
| | ) Counsel of record for this party: |
| | ) |
| | ) Richard A. Lanzillo, Esq. |
| | ) Knox McLaughlin Gornall |
| | ) & Sennett, P.C. |
| | ) 120 West 10th Street |
| | ) Erie, PA 16501 |
| | ) Telephone (814) 459-2800 |
| | ) Facsimile (814) 453-4530 |
| | ) Email rlanzillo@kmgslaw.com |
| | ) PA53811 |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ALLEGED PRE-CONTRACT EXPENSES**

**INTRODUCTION**

The only remaining issue in this matter is whether John Allin ("Allin") performed any work or services, or provided any equipment or materials that allow him to set-off any amount from the $340,482.90 he owes Heritage. Based upon Allin's pre-trial narrative and the limited information he has disclosed during discovery, Heritage anticipates that Allin will claim substantial fees and expenses for work that pre-dated the October 12, 2004 contract at issue. Allin has no legal entitlement to payment for any pre-contract work. Based upon the applicable

law, the language of the Contract, and the uncontroverted facts regarding the negotiations that led to the Contract, any evidence of pre-contract work or expenses is irrelevant to this matter.

## ARGUMENT

I. **Allin's reliance on law applicable to the reliance measure of damages is inapplicable to and does not support his attempt to set-off pre-contract fees and expenses from the amount he owes to Heritage.**

Within his pre-trial narrative and in his motion for summary judgment, Allin has attempted to focus this Court on the concept of reliance as a means to collect his alleged pre-contract work and fees. Reliance, either as an equitable doctrine or a measure of damages, is inapplicable to this action and, even if relevant, does not support Allin's claim for pre-contract set-offs.

As a measure of damages, reliance allows the non-breaching party to a contract to be compensated, **in the event of a breach**, for work done or costs incurred in reliance on the contract. Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Bd., 739 A.2d 133, 140 (Pa. 1999) ("The law makes clear that reliance damages may be available, following the breach of a contract, in order to 'put [a party] back in the position in which he would have been had the contract not been made.'" citing Trosky v. Civil Service Commission, 539 Pa. 356, 652 A.2d 813 (1995)). Unlike the normal expectation damages that seek to place a party in the position it would have been in had the contract been performed, reliance damages seek to place a party back in the position it was in pre-contract. Id. Two important aspects of this measure of damages illustrate that it does not support Allin's claim for pre-contract work and expenses.

First, Heritage did not breach the contract. The case law Allin has previously relied upon in this matter related to this measure of damages addresses situations where one party breached a contract and the other party was able to recover damages with reliance as the

2

appropriate measure.  Shovel Transfer and Storage, Inc., 739 A.2d at 140 (finding that the opposing party was "the party to actually breach the contract and may still be held liable for the breach" and concluding that reliance damages were appropriate); Harman v. Chambers, 57 A.2d 842, 845 (Pa. 1948) (addressing the appropriateness of reliance damages in a breach of contract case).  Here, Allin is the party in breach because he has failed to return the initial payment that he did not earn and to which Heritage is entitled.  As the breaching party, Allin is not entitled to any measure of damages.

Second, even if reliance damages were relevant, they only apply to post-contract activity.  Drysdale v. Woerth, 153 F.Supp.2d 678, 684 (E.D. Pa. 2001).  "'Expenses which are incurred prior to the time the contract was made are not recoverable either separately or in addition to profits lost because of the breach, unless it is affirmatively shows that the defendant has assumed responsibility for them.'" Id. quoting 22 Am.Jur.2D Damages, § 594 (1988).  This is a long established rule in this Circuit.  Curran v. Smith, 149 F. 945, 953 (3d Cir. 1906) (holding that a non-breaching party was not entitled to pre-contract expenditures, but was limited to recovering money expending between the execution of the contract and its breach).  This well-established rule illustrates the inapplicability of reliance damages to Allin's attempt to recoup pre-contract costs, and supports Heritage's position that pre-contract activity is simply irrelevant to this matter.

Allin also may argue that his alleged reliance on Heritage's actions and statements and the pre-contract work he claims to have performed as a result of this reliance, gives rise to an equitable claim.  This argument also fails.  The law of Pennsylvania, as interpreted by courts in this Circuit, is clear that when an express contract exists, equitable claims regarding matters covered by the contract cannot lie.  Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 416

(3d Cir. 1990); Linden v. SAP America, Inc., No. Civ. A. 03-3125, 2004 WL 1047719, *7 (E.D. Pa.). Here, the Contract defines work and services and provides a mechanism whereby Heritage was entitled to terminate the Contract, and Allin was entitled to payment only for work and services performed. The Contract covers the precise issue involved in this matter, rendering any claim by Allin for equitable relief for work or services he performed before or during the contract irrelevant.

>    II.    **The Contract does not provide for payment for any pre-contract activities.**

The Contract contains two provisions that unambiguously define the type of work and services for which Allin may claim an offset. The Contract's termination provision provides that, in the event of a termination, Allin is entitled to payment for "all work or services performed and equipment and materials supplied to the date of termination." (Contract, ¶ 17). Under the Contract's "Description of Services," work and services are defined as follows

> The Contractor **shall provide** all services required to manage, supervise and assure that Contractor, or the Subcontractors shall accomplish the following at the Properties covered by the Agreement [identification of actual snow removal and management activities]."

Importantly, nowhere in the Contract, which is fully and expressly integrated, is work or services defined to include any pre-contract activity. The description of services, as identified and emphasized in the above-quoted portion, contemplates only future services ("Contractor **shall provide** . . ."). Nowhere in the Contract is it stated that Allin performed compensable, pre-contract activities or that, if he did, he should be compensated for them. That Contract unambiguously defines all work and services as future work and unambiguously limits Allin's entitlement to payment in the event of a termination to payment for those future services.

The unambiguous language of the Contract establishes that Allin is not entitled to payment for pre-contract activities.  In addition to this language, however, the parties pre-contract communications and understanding further support this result.  Two pieces of evidence are telling on this point.  First, on August 13, 2004, Heritage sent a letter to one of Allin's employees enclosing a proposed contract and indicating, in no uncertain terms, that neither party had any obligation to the other until a signed contract existed, "It is [Heritage's] understanding that this [is] a non-binding expression of Heritage's intent and that neither Heritage or [Allin] are obligated in any way unless and until such time as the contract is signed by both parties." (August 13, 2004 Letter from Heritage to Allin, attached to Heritage's Motion as Exhibit A).  This clear expression of the non-binding nature of the parties' pre-contract negotiations was understood by Allin.  He has admitted that, had he and Heritage not signed the Contract, Heritage would not be obligated to pay for any of his pre-contract activity.  (Deposition of John Allin, p. 68, attached to Heritage's Motion as Exhibit C)

Allin's attempt to collect pre-contract expenses and fees fails at every turn.  His legal claims are inapplicable and do not support his claim for pre-contract work.  The Contract defines work as work that will be Allin was to provide in the future and limits his right to payment to such work.  Finally, if there were any question regarding the parties pre-contract intent, it is clearly identified by Heritage in its August 13, 2004 letter and was admittedly understood by Allin.  Thus, Allin has no basis to claim entitlement to payment for pre-contract work or expenses.  Any evidence of such work is irrelevant.

## CONCLUSION

Based on the foregoing, any evidence related to pre-contract offsets is irrelevant and inadmissible.

        Respectfully submitted,

        KNOX McLAUGHLIN GORNALL &
        SENNETT, P.C.

        BY: /s/     Richard A. Lanzillo, Esq.
            Richard A. Lanzillo, Esquire
            Neal R. Devlin, Esquire
            120 West Tenth Street
            Erie, PA  16501
            Telephone (814) 459-2800
            Facsimile (814) 453-4530
            Email rlanzillo@kmgslaw.com
            PA53811

        Attorneys for plaintiff,
        Heritage Realty Management, Inc.

# 680002