IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERITAGE REALTY MANAGEMENT, )
INC., )
       Plaintiff )
 )
   v. )  CIVIL ACTION NO. 04-333 ERIE
 )
JOHN ALLIN d/b/a ALLIN )
COMPANIES and SNOW MANAGEMENT )
GROUP, )
       Defendant )
 )
   v. )
 )
SYMBIOT BUSINESS GROUP, INC., )
et al., )
   Third-Party Defendants )

PRETRIAL MOTIONS
(COURT ORDERS)

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Wednesday, June 21, 2006.

APPEARANCES:

    NEAL R. DEVLIN, Esquire, appearing on behalf of
    the Plaintiff.

    CRAIG A. MARKHAM, Esquire, appearing on behalf
    of the Defendant.

    DANIEL J. PASTORE, Esquire, appearing on behalf
    of the Third-Party Defendants.

Ronald J. Bench, RMR - Official Court Reporter


EXHIBIT A

P R O C E E D I N G S

(Whereupon, the following excerpt of proceedings occurred on Wednesday, June 21, 2006.)

(Recess from 11:03 a.m.; until 11:12 a.m.)

THE COURT: These are going to be orders.

ORDERS

Presently pending before the court are cross-motions for summary judgment filed by the plaintiff and defendant. The background is well-known to the parties, so I am somewhat abbreviated here in sketching out the operative facts. But, basically, the parties entered into a contract on October 12, 2004. Under the terms of which Allin agreed to "provide all services required to manage, supervise and assure," the performance of all "snow and ice piling, snow blowing, shoveling, salting, sanding and snow and ice removal operations." On October 13, 2004, the record reflects that Heritage paid an initial installment to Allin in the amount of $340,482.90. Section 17 of the contract authorized Heritage to "terminate the contract by giving Allin 10 days written notice." Heritage had the right under the contract to terminate it if Allin was "in default with respect to any of its obligations or without any cause whatsoever." The contract

further provided that in the event of a termination, Allin was to be paid "for all work or services performed and equipment and materials supplied to the date of termination."
On November 3, 2004, Heritage issued a written notice to Allin that it was terminating the contract and demanded the return of $340,482.90.

The plaintiff argues that it is entitled to summary judgment on the basis that it terminated the contract with Allin before any work was performed. And it is entitled to reimbursement in the full amount of the money that it paid out. Plaintiff also contends that Allin breached the contract when it entered into third-party contract with Symbiot. The defendant counters that under the plain language of Section 17 of the contract, the plaintiff is not entitled to seek a refund from the defendant in any amount if the contract is terminated. And, alternatively, the defendant argues that there are material issues of fact as to the amount and value of work and services which it performed and as a result of which would be entitled to an offset.

Paragraph 17 of the contract provides in pertinent part:

"Heritage shall have the right to terminate this agreement by giving contractor 10 days written notice in the following events: (a) Contractor is in default with respect to any of its obligations under this agreement; (b) If any

property or properties covered by this contract scheduled to be sold; (c) Without any cause whatsoever, provided, in all such events, Heritage shall pay contractor for all work or services performed and equipment and materials supplied to the date of termination."

As stated in Steuart v. McChesney, 498 Pa. 45:

"It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself. And when the words are clear and unambiguous, the intent is to be discovered only from the expressed language of the agreement." Citing cases. "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. When the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence." At page 49.

It's also Hornbook law that "when there has been a breach of contract, damages are awarded in order to place the aggrieved party in the same position he would have been had the contract been performed. The theory behind this philosophy is based on an attempt to make the non-breaching party whole again, not to provide him a windfall. That's Northeastern Vending Co. v. PDO, Inc., 414 Pa. Supra. 200 (1992).

Having carefully considered the matter and specifically subparagraph C in Section 17 of the contract,

1  and after oral argument, I am of the view that that particular
2  provision of the contract is clear and unambiguous within the
3  meaning of the previously-described cases. In other words, if
4  the contract is terminated during a given year, Heritage's
5  obligation is to pay "for all work or services performed and
6  equipment and materials supplied to the date of termination."
7  There is no indication in the plain language of the contract,
8  in fact, in my view, it would be nonsensical to read into it a
9  provision which, in essence, would require Heritage to forfeit
10 in its entirety any installment payment made under the contract
11 regardless of the amount of work that had been performed.
12 Otherwise stated, that interpretation would create a windfall.
13         That said, however, I'm of the opinion that there
14 are material issues of fact as to the nature, value and perhaps
15 timing of services performed by Allin relative to the issue of
16 offset, such that summary judgment is inappropriate.
17 Consequently, the plaintiff's motion for summary judgment is
18 denied.
19         And largely for the same reasons that I just
20 articulated, the defendant's summary judgment, cross-motion for
21 summary judgment, is denied.
22         There is also pending before the court a motion to
23 strike under Rule 14(a). Motion to strike that is on behalf of
24 Symbiot Business Group. In determining whether a motion to
25 strike should be granted, the court considers, among other

Case 1:04-cv-00333-SJM    Document 84-2    Filed 09/05/2006    Page 6 of 8

6

1  things, the prejudice to the plaintiff, the prejudice to the
2  third-party defendant, the reasons for the delay and whether
3  the joinder would delay or complicate the trial.  <u>United States</u>
4  <u>v. New Castle County</u>, 111 F.R.D. 628 (D.Del. 1986).
5         Examining each of those factors, I find, number one,
6  that given the stage of this case and the fact that we are, as
7  between the original plaintiff and the original defendant, we
8  are within striking distance of trial, the plaintiff would be
9  prejudiced by a delay.  Because it would inevitably require
10 additional discovery for Symbiot to come up to speed.  The
11 third-party defendant, Symbiot, even if I were to push the
12 entire case forward, would be prejudiced in a way that could
13 not really be remedied, in that it had not been a participant
14 in all of the discovery that had gone before.  Thirdly, given
15 the nature of the theory of joinder, although, this isn't a
16 major point and Symbiot could have been joined at any time,
17 particularly at an earlier point in time.  And, finally, it
18 seems to me, the joinder of Symbiot not only would delay the
19 trial, for reasons that I've just indicated, namely, the need
20 to extend discovery, but in my view would complicate the trial
21 because the battle between Allin and Symbiot grows out of an
22 entirely different factual matrix and legal theory than the
23 battle between Heritage and Allin.  So the motion to strike is
24 granted.
25         With respect to the motion to consolidate the

1  actions, in my view the consolidation of the actions is
2  inappropriate because these cases, as was pointed out in the
3  papers, are really at opposite ends of the litigation time
4  line.  And to join them now at the hip would unduly delay, and
5  I think inappropriately delay the earlier case.
6         So the motion to strike -- to clarify then, if I
7  didn't already say this, the summary judgment motions are
8  denied; the motion to strike is granted; and the motion to
9  consolidate is denied.
10
11         (Whereupon, at 11:25 a.m., the proceedings were
12 concluded.)
13
14              - - -

1  C E R T I F I C A T E

4  I, Ronald J. Bench, certify that the foregoing is a
5  correct transcript from the record of proceedings in the
6  above-entitled matter.

11  _____
12  Ronald J. Bench