IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERITAGE REALTY MANAGEMENT, INC., | ) | CASE NO. CA04-333 ERIE |
| | ) | |
| Plaintiff, | ) | JUDGE SEAN McLAUGHLIN |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN ALLIN d/b/a ALLIN COMPANIES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant John Allin d/b/a/ Allin Companies ("Defendant') submit the following objections and responses to Plaintiff Heritage Realty Management, Inc.'s ("Plaintiff") Interrogatories and Requests for Production of Documents Pursuant to the Federal Rules of Civil Procedure as follows:

## GENERAL OBJECTIONS

The following objections are applicable to all interrogatories and requests for production of documents ("Requests"), are incorporated by reference into each and will therefore not be repeated.

1.    Defendant objects to these Requests to the extent they seek to impose obligations and requirements not required by the Federal Rules of Civil Procedure.

2.    Defendant objects to these Requests to the extent they seek information and/or production of documents protected from disclosure by the attorney-client privilege or the attorney work product doctrine and inadvertent production of such documents shall not be deemed a waiver of any privilege with respect to such documents or information.



EXHIBIT A

3.    Defendant objects to the definition of the term "Agreement" used in Plaintiff's Discovery Requests as being vague and ambiguous. Plaintiff's responses to Interrogatories or Document Production Requests substitute the term "Contract" for "Agreement" and refers to the written document fully executed on October 12, 2004 between Heritage Realty Management, Inc. John Allin d/b/a Allin Companies.

4.    Defendant makes his responses to the best of his and his agents' present knowledge, information and belief and reserves the right to revise or amend any of the responses based upon additional or different non-privileged information that discovery or additional investigation may disclose. Defendant further reserves all objections or other questions as to competency, foundation, relevance, materiality or admissibility in evidence of the responses and any information or document provided herein or pursuant thereto.

5.    The General Objections are continuing obligations throughout each of the responses herein and are incorporated in each of the responses as if fully set forth in each response.

## INTERROGATORIES

1.    State the date when Defendant signed the Agreement.

ANSWER: Defendant signed the Contract on October 4, 2004.

2.    State the date when Defendant believes the Agreement went into effect.

ANSWER:  The Contract was fully executed on October 12, 2004, but it was necessary for Defendant to perform some of the obligations that were included in the Contract, and he did begin performing those obligations of the Contract, on August 13, 2004.

3.    State the date when Defendant received notice of termination of the Agreement.

ANSWER:  Defendant states that it received notice of termination of the Contract on November 4, 2004.

4.    Itemize all expenses which Defendant believes he is entitled to receive credit under the terms of the Agreement.  (List the type of expense, the date it was incurred, the date it was paid, the person or entity to who it was paid and the amount of the expense).

ANSWER:  Refer to documents marked with Bates Nos. 00001-00004.  For the dates travel expenses were incurred refer to documents marked with Bates Nos. 00756-00822.  The person or entity to whom the money was paid is contained in the documents listed herein with the exception of the supply costs.  All supplies were purchased through Staples.  Further investigation is ongoing for documents relating to these purchases and responses to these Requests may be supplemented.

5.    State whether any of the expenses listed in the answer to the previous Interrogatory went to individuals or entities which are affiliated with and/or related to the Defendants.  (If answered in the affirmative, identify the expense and how the entity is affiliated or related to the Defendants).

ANSWER: Objection.  Defendant objects to this Interrogatory because it is vague and ambiguous.  Without waiving this objection, refer to documents marked with Bates Nos. 00001-00004.

6.    Itemize in detail all funds the Defendants received from the Plaintiff pursuant to the Agreement which are claimed to have been expended in furtherance of the Agreement.

ANSWER:  Refer to document produced in response to Interrogatory No. 5.

7.    List all work, services performed and all equipment and materials supplied as referred to in Defendant's Fourth Affirmative Defense, (including the date of service, the type of service, the location of service, the recipient of the service, the value of the service, and the date of payment).

ANSWER:  Refer to document produced in response to Interrogatory No. 4.  Also refer to documents marked with Bates Nos. 01321-02578, documents marked with Bates Nos.  00293-00458, and documents marked with Bates Nos. 00005-00292.  Services performed in connection with preparing documents related to Requests for Proposals were performed at Defendant's offices.

8.    List all documents and records both tangible and electronic which reflect any expenses of the type referred to in the Defendant's Fourth Affirmative Defense.

ANSWER:  Refer to documents produced in response to Interrogatory No. 7.

9.    Itemize in detail all work performed by Defendant in connection with the bidding

process which lead to execution of the Agreement, including type of work, the date work was

done, the person or entity who did the work, and the cost to Defendant of doing the work.

ANSWER: Objection. Defendant objects to this Interrogatory because the term "bidding process" is vague, ambiguous and undefined. Without waiving this objection, Defendant denies that a bidding process, as he understands that term, lead to the execution of the contract.

10.    List all action taken by Defendant to mitigate damages after receipt of the notice

from Plaintiff concerning termination of the Agreement.

ANSWER: Defendant terminated two field managers hired and trained for the purposes of fulfilling its obligations to Heritage. Defendant also reclaimed vehicles that had been given to these field managers after Defendant hired them.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All documents and correspondence which support any credits or setoffs the Defendants believe they are entitled to under the Agreement.

ANSWER:  Refer to documents produced in response to Interrogatory Nos. 4 and 7.

2.      All documents and correspondence which support the allegations contained in the Defendant's Fourth Affirmative Defense.

ANSWER:  Refer to documents produced in response to Interrogatory Nos. 4 and 7.

3.      All checks which were used to pay any bill(s) for which the Defendants contend they are entitled to a credit or set off under the Agreement.

ANSWER:  Defendant does not receive copies of cancelled checks from its bank and therefore does not have possession of the checks requested.  Refer to documents produced in response to Interrogatory No. 4 for documentation relating to the credit or set off to which Defendant contends it is entitled under the Contract.

4.      All documents and correspondence relating to the creation of the subject

Agreement or its execution or performance.

ANSWER:  Objection.  Defendant objects to this request because it is vague, overbroad, unduly burdensome and incomprehensible.  Without waiving this objection Defendant is producing drafts of the Contract.  Refer to documents marked with Bates Nos. 00462-00755.

5.      All documents and correspondence between the Defendant and third parties

relating to services or goods provided for which the Defendant believes they are entitled to a

credit or setoff:

ANSWER:  Refer to documents produced in response to Interrogatory Nos. 4 and 7.

6.      Any and all documents and correspondence, other than the Agreement, which

Defendant believes forms the agreement between the parties with respect to the matter which

forms the subject of this lawsuit.

ANSWER:  Defendant does not contend that any documents other than the Contract form the agreement between the parties with respect to the matter which forms the subject of the lawsuit.

7.    All documents and correspondence relating to the bidding process which lead to the execution of the Agreement.

ANSWER:    Objection. See response to Interrogatory Number 9.

As to Objections:

Craig Markham, Esq. (38531)
Elderkin, Martin, Kelly & Messina
105 E. 8th Street
Erie, Pennsylvania 16501
Telephone (814) 456-4000
Facsimile (814) 454-7411

Frank R. DeSantis, Esq. (0030954)
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone (216) 566-5500
Facsimile (216) 566-5800

*Co-Counsel for Defendant John Allin
d/b/a Allin Companies*

## CERTIFICATE OF SERVICE

A copy of the foregoing *Defendant's Objections and Response to Plaintiff's*

*Interrogatories and Requests for Production of Documents Pursuant to the Federal Rules of*

*Civil Procedure*  was served via hand delivery this 18th day of May, 2005 to the following:

John R. Wingerter, Esq.
John Rogala Evanoff, Esq.
Carney & Good
254 West 6th Street
Erie, Pennsylvania  16507-1398

  *Counsel for Plaintiff Heritage Realty Management, Inc.*

Craig A. Markham, Esq.
*One of the Attorneys for Defendant*
*John Allin d/b/a Allin Companies*

Smgsrvr\Users\jkeep\HERITAGE\Expense Log.xls

| Expense | Date Incurred | Date Paid | Entity Paid | Amount of Expense | Affiliation All in Co/SMG | COMMENTS |
|---|---|---|---|---|---|---|
| **JV Travel expenses** | | | | | | |
| **Brian Marshall Travel expenses** | | | | | | |
| **Peggy Allin - interviews** | | | | | | |
| Airfare | 10/18/2004 | | United Airlines | $1,037.60 | same | |
| Hotel | 10/20/2004 | 10/20/2004 | Comfort Inn - Denver | $64.99 + tax | same | |
| Hotel | 10/21/2004 | 10/21/2004 | Fairfield Inn & Suites - Minn/St. Paul | $82.01 + tax | same | |
| Taxi | 10/22/2004 | | | $15.00 | same | |
| Hotel | 10/22/2004 | | Radisson Hotel - Des Moines IA | $99.00 + tax | same | |
| Meals 10/18-10/23 | 10/18-10/23 | | various | $25.00 per diem x 6 | same | |
| Erie to Cleveland | 10/25/2004 | 10/25/2004 | Anderson Airlink | $25.00 | same | |
| Cleveland to Chicago | 10/25/2004 | | Continental | $64.90 | same | * Had a $95.60 ecredit |
| Hotel | 10/25/2004 | 10/25/2004 | Fairfield Inn Chicago | 119.00+tax | same | personal or company? |
| Ground trans. Cleveland to Erie | 10/26/2004 | | John Allin | unknown | same | |
| **Duane Haataja Travel** | | | | | | |
| Ground Transportation | 11/1/2004 | 11/1/2004 | ATA | $181.70 | new hire | |
| | | | (picked up from Pitts. Airport | | new hire | PJ Short picked up |
| Hotel 11/1/04 - 11/6/04 | | | El Patio Motel | $44.00 x 5 nights | new hire | |
| training 11/2 - 11/4/04 | | | | | new hire | training @SMG |
| **Bryan Rohe Travel** | | | | | | |
| Transportation from Cleve - Erie | 10/31/2004 | | ATA/Southwest | $221.70 | new hire | |
| Hotel 10/31/04 - 11/4/04 | | | Anderson Airlink | $25.00 | new hire | trans fr hotel to SMG |
| | | | | 0 | new hire | roomed w/ D Dziuban |
| training 11/2/04 - 11/4/04 | | | | | new hire | training @ SMG |
| **David Dziuban Travel** | | | | | | |
| Transportation from Cleve - Erie | 10/31/2004 | 10/31/2004 | Southwest | $102.60 | new hire | |
| Hotel 10/31/04 - 11/4/04 | | | Anderson Airlink | $20.00 | new hire | trans fr hotel to SMG |
| | | | | $44.00 x 5 nights | new hire | |
| training 11/2/04 - 11/4/04 | | | | | new hire | training @SMG |
| **Legal Council** | | | | | | |
| **Supplies** | | | | | | |
| Labels | | | | $ 135.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Business Envelopes | | | | $ 110.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Manilla Envelopes | | | | $ 65.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Paper | | | | $ 78.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Postage | | | | $ 1,386.75 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Copy Count | | | | $ 537.50 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Faxing | | | | $ 125.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| **Personnel**  as of 11/8/04 | | | | | | |
| sites entered in system | | | | $ 180.00 | ops-audit - Beth | 4 hours at $ 45 per |
| sites entered in system | | | | $ 180.00 | ops-admin - Tina | 4 hours at $ 45 per |
| phone calls | | | | $ 1,080.00 | ops-audit - Beth | 24 hours at $45 per |
| phone calls | | | | $ 1,080.00 | ops-admin - Linda | 24 hours at $45 per |
| phone calls | | | | $ 1,080.00 | ops-admin - Stacey | 24 hours at $45 per |
| phone calls | | | | $ 1,080.00 | ops-admin - Tina | 24 hours at $45 per |
| rfp data entry | | | | $ 360.00 | ops-admin - Linda | 8 hours at $ 45 per |

EXHIBIT B

Smgsnr\Users\jkeep\HERITAGE\Expense Log.xls

| | | | |
|---|---|---|---|
| | | rfp data entry | |
| Regional Manager-SPs, Site Reviews, Budgeting | $ | 6,175.00 | ops mgr - L. Edwards | 65 hours @ $ 95 per |
| Field manager-SPs, Site Reviews, Budgeting | $ | 3,800.00 | rm - Smallwood | 40 hours @ $95 per |
| Field manager-SPs, Site Reivws | $ | 760.00 | fm - J. Casey | 8 hours at $95 per |
| Field manager-SPs, Site Reivws | $ | 950.00 | fm - J. terrance | 10 hours at $95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | $ | 9,500.00 | rm - R Hrovat | 100 hours at $95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | $ | 9,500.00 | fm - R Santoro | 100 hours at $95 per |
| Production-Site Visits, Production Maps | $ | 2,375.00 | prod coord- D. Gallagher | 25 hours at $95 per |
| Production-Production Maps & Binders | $ | 9,000.00 | prod - T. Pancura | 200 hours at $45 per |
| Production-Number Calculations | $ | 5,200.00 | prod - C. Zeigowski | 80 hours at $65 per |
| Production-SPs, Field Mangers, Training, Budgeting | $ | 3,800.00 | prod - R. Rieder | 40 hours at $95 per |
| Special Accounts Manager-Estimating, Point of Contact Info., Training | $ | 9,500.00 | sac - B. Marshall | 100 hours at $95 per |
| Bus. Development | $ | 33,000.00 | bus devel - J Vernon | 200 hours at $165 per |
| Bus. Development | $ | 22,500.00 | bus devel - J Allin | 100 hours at $225 per |
| Human Resources | $ | 45,000.00 | h.r. - P Allin | 200 hours at $225 per |
| Accounting | $ | 1,140.00 | accounting - M Suleski | 12 hours at $95 per |
| new hire -field manager | $ | 9,500.00 | Dave Dziuban - Chicago | 100 hours at $95 per |
| new hire -field manager | $ | 9,500.00 | Bryan Rohe -DesMoines | 100 hours at $95 per |
| new hire -field manager | $ | 9,500.00 | Duane Haatajja-Minneapolis | 100 hours at $95 per |

JA00002

| Expense | Date Incurred | Date Paid | Entity Paid | Amount of Expense | Affiliation to Allin Co/SMG | COMMENTS |
|---|---|---|---|---|---|---|
| Flight to Ft. Lauderdale-John Allin | 1/21/2004 | 1/21/2004 | Northwest Airlines | 233.9 | same | |
| Flight to Ft. Lauderdale-Jeff Vernon | 1/21/2004 | 1/21/2004 | Northwest Airlines | 207.9 | same | |
| Ground Transportation | 2/22/2004 | 2/22/2004 | | | same | |
| Hotel -JA & JV | 2/22/2004 | 2/22/2004 | Harbor Beach Resort & Spa Mariott | $0 | same | $319.00 paid by Heritage |

JA00003

| Expense | AMOUNT | TOTAL |
|---|---|---|
| AIRFARE | $ 1,037.60 | |
| | $ 64.90 | |
| | $ 181.70 | |
| | $ 221.70 | |
| | $ 102.60 | $ 1,608.50 |
| HOTEL | $ 64.99 | |
| | $ 82.01 | |
| | $ 99.00 | |
| | $ 220.00 | |
| | $ 220.00 | $ 686.00 |
| FOOD | $ 150.00 | |
| | $ 125.00 | |
| | $ 125.00 | |
| | $ 125.00 | $ 525.00 |
| GROUND | $ 25.00 | |
| | $ 20.00 | |
| | $ 25.00 | $ 70.00 |
| TRANSP. TOTAL | | $ 2,889.50 |
| | | |
| LABELS | $ 135.00 | $ 135.00 |
| ENV | $ 110.00 | |
| | $ 65.00 | $ 175.00 |
| PAPER | $ 78.00 | $ 78.00 |
| POSTAGE | $ 1,386.75 | $ 1,386.75 |
| COPIES | $ 537.50 | $ 537.50 |
| FAXING | $ 125.00 | $ 125.00 |
| SITE DATA ENTRY | $ 180.00 | |
| | $ 180.00 | $ 360.00 |
| PHONE CALLS | $ 1,080.00 | |
| | $ 1,080.00 | |
| | $ 1,080.00 | |
| | $ 1,080.00 | $ 4,320.00 |
| RFP DATA ENTRY | $ 360.00 | |
| | $ 6,175.00 | $ 6,535.00 |
| MGMT/PRODUCTION | $ 3,800.00 | |
| | $ 760.00 | |
| | $ 950.00 | |
| | $ 9,500.00 | |
| | $ 9,500.00 | |
| | $ 2,375.00 | |
| | $ 9,000.00 | |
| | $ 5,200.00 | |
| | $ 3,800.00 | |
| | $ 9,500.00 | |
| | $ 33,000.00 | |
| | $ 22,500.00 | |
| | $ 45,000.00 | |
| | $ 1,140.00 | |
| | $ 9,500.00 | |
| | $ 9,500.00 | |
| | $ 9,500.00 | $ 184,525.00 |
| SUPPLIES/PERSONNEL TOTAL | | $ 198,177.25 |
| GRAND TOTAL | | $ 201,066.75 |

JA00004

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERITAGE REALTY MANAGEMENT,          )
INC.,                                )
                    Plaintiff        )
                                     )
          v.                         )          CIVIL ACTION NO.  04-333  ERIE
                                     )
JOHN ALLIN d/b/a ALLIN               )
COMPANIES and SNOW MANAGEMENT        )
GROUP,                               )
                    Defendant        )


HEARING ON PLAINTIFF'S MOTION TO COMPEL


Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Wednesday, November 23, 2005.


APPEARANCES:

RICHARD A. LANZILLO, Esquire, appearing on
behalf of the Plaintiff.

CRAIG A. MARKHAM, Esquire, appearing on behalf
of the Defendant.


Ronald J. Bench, RMR - Official Court Reporter

EXHIBIT

tabbies

C

2

1                         P R O C E E D I N G S

2

3              (Whereupon, the proceedings began at 10:58 a.m., on

4     Wednesday, November 23, 2005, in Judge's Chambers.)

5

6              THE COURT:  We have a motion to compel here.

7     There's a request for various documents that were identified at

8     our previous get-together.  My understanding is they have not

9     yet been produced, is that right?

10             MR. LANZILLO:  That's correct, your Honor.  Judge,

11    the need for documents is twofold.  There was some thought that

12    if those documents would be produced, Mr. Allin indicated this,

13    it would be difficult to come up with them, that that might

14    facilitate further settlement discussions.  At the same time

15    failing that, we have until December 10th to complete our

16    depositions, we really can't even get them started until we

17    take a look at those records.

18             THE COURT:  What's going on with these records?

19             MR. MARKHAM:  Well, as far as I know -- I've been in

20    communication with Mr. Allin principally by e-mail since the

21    October 31st conference we had.  My recollection is at that

22    conference it was agreed he'd try to produce these records in

23    two weeks.  We're a week or so late in doing that.  After I got

24    the motion late yesterday, I e-mailed him with the motion, he

25    indicated that he was out of the office, people there were

1    working on this.  This morning I actually called his office,

2    he's not there, he's in Canada somewhere, I did speak with his

3    wife, who's been kind of the office manager.  Who indicates

4    that the records, she's not involved in collecting them, she's

5    not sure they exist.  She is now trying to communicate with her

6    husband, who's apparently in Canada somewhere and not expected

7    back until late, midnight.  I sent him an e-mail, also, when I

8    got the call this morning.  I've not received them, the records

9    that we were talking about at the last meeting.

10                THE COURT:  That were the subject of the request for

11   production?

12                MR. MARKHAM:  Right.  There was a request even

13   before Attorney Lanzillo became involved for production, which

14   was responded to, we produced like a whole box of documents.  I

15   understand he wants more.  If they exist, he certainly is

16   entitled to them.

17                THE COURT:  When does discovery end, December 10th?

18                MR. LANZILLO:  December 10th.  What was produced,

19   judge, was a schedule purporting to be itemized expenses

20   incurred relative to this contract.  The lion's share, as I

21   recall, of the expenses that were attributable to many, many

22   hours of work that was purportedly done by various people in

23   this organization.  And Mr. Allin indicated we have the records

24   to document what was done and that's how we followed up, and

25   the basis on which the court directed further production.

4

1          THE COURT:  Wasn't there -- I'm just trying to

2     figure out how to fashion this order.  Wasn't there some

3     original belief on the part of Mr. Allin that these records

4     existed?

5          MR. MARKHAM:  My recollection is that he did

6     indicate that he thought they exist.

7          THE COURT:  In some form or fashion?

8          MR. MARKHAM:  Right.  When I talked to his wife

9     today, this is really the first she heard of this document

10    request, she wasn't convinced that they do exist.  Although --

11         THE COURT:  Well, I'm going to enter an order here

12    presently that they be produced by a certain date.  Failing

13    that -- well, put it this way.  After a reasonable and diligent

14    search, parties are always entitled to say we don't have any

15    records that would address the issue.  And you can't get what

16    they don't have.  If that's the answer, that's the answer.

17         MR. LANZILLO:  I understand, judge.  Mr. Allin has

18    gone on record, not just saying the documents exist, but

19    saying -- quantified the number of hours that were devoted to

20    specific tasks.  Which unless someone was working from a

21    remarkable memory, makes me question where he came up with

22    those numbers.  But that can be the subject of further

23    discussion at a later date.

24         THE COURT:  Like a deposition.  Put it this way.  If

25    the records exist and they're not produced by a date certain,

1    I'm going to preclude any proof on the issue, which is

2    essentially the functional equivalent to almost directing a

3    verdict in favor of them on their damage issue.  On the other

4    hand, if they don't have the records, then they can't be

5    faulted for that.  And it just becomes a question of weight to

6    the testimony, I suppose.  Do you follow what I'm saying?

7              MR. MARKHAM:  I believe I do, judge.  If they exist

8    or they're not produced in accordance with this order --

9              THE COURT:  The sanction is going to be that you're

10   going to be precluded from defending on the basis of these

11   other startup costs.  Which essentially is going to be that's

12   the case.

13             MR. MARKHAM:  If the documents don't exist, that

14   issue rises and falls with the testimony?

15             THE COURT:  Yes.  I can't remember all of what he

16   said or didn't say.  Sometimes people say they have things and

17   it turns out that they don't have them.  But, in any event,

18   with respect to the motion to compel discovery, the motion is

19   granted in this respect.

20             The defendant shall have until December the 10th to

21   produce any and all records within their possession or control

22   responsive to the discovery request.  Or failing that, to

23   explain in detail the effort or efforts that were made to

24   locate any such records in the event that the defendants

25   ultimately claim that they have no records that are responsive.

6

1   In the event that the records do exist but for logistical or

2   other reasons have not been or cannot be produced by December

3   10th, I will preclude any proof on the issues that would have

4   been generated in connection with those records.  Specifically,

5   the issue of an offset that the defendant is looking for.

6           Insofar as discovery is concerned, I'll extend

7   discovery for 30 days through January 10th, and all the other

8   timetables will move out accordingly.  All right, that's it.

9

10          (Whereupon, at 11:08 a.m., the proceedings were

11  concluded.)

12

13                              - - -

14

15

16

17

18

19

20

21

22

23

24

25

7

1                          C E R T I F I C A T E

2

3

4

5         I, Ronald J. Bench, certify that the foregoing is a

6    correct transcript from the record of proceedings in the

7    above-entitled matter.

8

9

10

11

12    _____

13    Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25

| Expense | Date Incurred | Date Paid | Entity Paid | Amount of Expense | Affiliation AIIin Co/SMG | COMMENTS |
|---|---|---|---|---|---|---|
| **Duane Haataja Travel** | 11/1/2004 | | ATA | $181.70 | new hire | |
| Ground Transportation | 11/1/2004 | | (picked up from Pitts. Airport | | new hire | PJ Short picked up |
| Hotel 11/1/04 - 11/6/04 | | | El Patio Motel | $ 44.00 x 5 nights | new hire | |
| training 11/2 - 11/4/04 | | | | | new hire | training @ SMG |
| **Bryan Rohe Travel** | 10/31/2004 | | ATA/Southwest | $221.70 | new hire | |
| Transportation from Cleve - Erie | 10/31/2004 | | Anderson Airlink | $25.00 | new hire | trans fr hotel to SMG |
| Hotel 10/31/04 - 11/4/04 | | | | 0 | new hire | roomed w/ D Dzuban |
| training 11/2/04 - 11/4/04 | | | | | new hire | training @ SMG |
| **David Dziuban Travel** | 10/31/2004 | | Southwest | $102.60 | new hire | |
| Transportation from Cleve - Erie | 10/31/2004 | | Anderson Airlink | $20.00 | new hire | trans fr hotel to SMG |
| Hotel 10/31/04 - 11/4/04 | | | | $ 44.00 x 5 nights | new hire | training @ SMG |
| training 11/2/04 - 11/4/04 | | | | | new hire | |
| Regional Manager-SPs, Site Reviews, Budgeting | | | | $    3,800.00 | rm - Smallwood | 40 hours @ $95 per |
| Field manager-SPs, Site Reivews | | | | $       760.00 | fm - J Casey | 8 hours at $95 per |
| Field manager-SPs, Site Reivews | | | | $       950.00 | fm - J. terrance | 10 hours at $95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | | | | $    9,500.00 | rm - R Hrovat | 100 hours at $95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | | | | $    9,500.00 | fm - R Santoro | 100 hours at $95 per |
| Production-Site Visits, Production Maps | | | | $    2,375.00 | prod coord- D. Gallagher | 25 hours at $95 per |
| Production-Production Maps & Binders | | | | $    9,000.00 | prod - T. Pancura | 200 hours at $45 per |
| Production-Number Calculations | | | | $    5,200.00 | prod - C. Zelgowski | 80 hours at $65 per |
| Production-SPs, Field Mangers, Training, Budgeting | | | | $    3,800.00 | prod - R. Rieder | 40 hours at $95 per |
| Special Accounts Manager-Estimating, Point of Contact Info., Training | | | | $    9,500.00 | sac - B. Marshall | 100 hours at $95 per |
| new hire -field manager | | | | $    9,500.00 | Dave Dziuban - Chicago | 100 hours at $95 per |
| new hire -field manager | | | | $    9,500.00 | Bryan Rohe- Des Moines | 100 hours at $95 per |
| new hire -field manager | | | | $    9,500.00 | Duane Haataja-Minneapolis | 100 hours at $95 per |



EXHIBIT
D

| Expense | Date Incurred | Date Paid | Entity Paid | Amount of Expense | Affiliation Allin Co/SMG | COMMENTS |
|---|---|---|---|---|---|---|
| **JV Travel expenses** | | | | | | |
| **Brian Marshall Travel expenses** | | | | | | |
| Peggy Allin - Interviews | | | | | | |
| Airfare | 8/23/2004 | | Sun Country Airlines | $129.10 | same | |
| Hotel | 8/23/2004 | 8/25/2004 | Courtyard Minneapolis-St. Paul Airp | $149.00+Tax | same | |
| Airfare | 8/25/2004 | | Northwest Airlines | $364.69 | same | |
| Meals 08/23/04-082504 | 10/18-10/23 | | various | $ 25.00 perdiem x 3 | same | |
| Airfare | 10/18/2004 | | United Airlines | $1,037.60 | same | |
| Hotel | 10/20/2004 | 10/20/2004 | Comfort Inn - Denver | $ 64.99 + tax | same | |
| Hotel | 10/21/2004 | 10/21/2004 | Fairfield Inn & Suites - Minn/St. Paul | $ 82.01 + tax | same | |
| Taxi | 10/22/2004 | | | $15.00 | same | |
| Hotel | 10/22/2004 | | Radisson Hotel - Des Moines IA | $ 99.00 + tax | same | |
| Meals 10/18-10/23 | 10/18-10/23 | | various | $ 25.00 perdiem x 6 | same | |
| Erie to Cleveland | 10/25/2004 | 10/25/2004 | Anderson Airlink | $25.00 | same | * Had a $95.80 ecredit |
| Cleveland to Chicago | 10/25/2004 | | Continental | $64.90 | same | |
| Hotel | 10/25/2004 | 10/25/2004 | Fairfield Inn Chicago | 119.00-tax | same | personal or company? |
| Ground trans. Cleveland to Erie | 10/26/2004 | | John Allin | unknown | same | |
| **Duane Haataja Travel** | | | | | | |
| Ground Transportation | 11/1/2004 | | ATA | $181.70 | new hire | |
| | 11/1/2004 | | (picked up from Pitts. Airport | | new hire | PJ Short picked up |
| Hotel 11/1/04 - 11/6/04 | | | El Patio Motel | $ 44.00 x 5 nights | new hire | |
| training 11/2 - 11/4/04 | | | | | new hire | training @SMG |
| **Bryan Rohe Travel** | | | | | | |
| Transportation from Cleve - Erie | 10/31/2004 | | ATA/Southwest | $221.70 | new hire | trans fr hotel to SMG |
| Hotel 10/31/04 - 11/4/04 | 10/31/2004 | | Anderson Airlink | $25.00 | new hire | roomed w/ D Dziuban |
| training 11/2/04 - 11/4/04 | | | | 0 | new hire | training @ SMG |
| **David Dziuban Travel** | | | | | | |
| Transportation from Cleve - Erie | 10/31/2004 | | Southwest | $102.60 | new hire | |
| Hotel 10/31/04 - 11/4/04 | 10/31/2004 | | Anderson Airlink | $20.00 | new hire | trans fr hotel to SMG |
| training 11/2/04 - 11/4/04 | | | | $ 44.00 x 5 nights | new hire | training @SMG |
| **Legal Council** | | | | | | |
| **Supplies** | | | | | | |
| Labels | | | | $ 135.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Business Envelopes | | | | $ 110.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Manilla Envelopes | | | | $ 65.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Paper | | | | $ 78.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Postage | | | | $ 1,386.75 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Copy Count | | | | $ 537.50 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Faxing | | | | $ 125.00 | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| **Personnel** | as of 11/8/04 | | | | | |
| sites entered in system | | | | $ 180.00 | ops-audit - Beth | 4 hours at $ 45 per |
| sites entered in system | | | | $ 180.00 | ops-admin - Tina | 4 hours at $ 45 per |
| phone calls | | | | 1,080.00 | ops-audit - Beth | 24 hours at $45 per |

H:\russell\Heritage Expense Log\12/8/2005 2:42 PM

| | | | | |
|---|---|---|---|---|
| phone calls | $ | 1,080.00 | ops-admin - Linda | 24 hours at $45 per |
| phone calls | $ | 1,080.00 | ops-admin - Stacey | 24 hours at $45 per |
| phone calls | $ | 1,080.00 | ops-admin - Tina | 24 hours at $45 per |
| rfp data entry | $ | 360.00 | ops-admin - Linda | 8 hours at $ 45 per |
| rfp data entry | $ | 6,175.00 | ops mgr - L. Edwards | 65 hours @ $ 95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | $ | 3,800.00 | rm - Smallwood | 40 hours @ $95 per |
| Field manager-SPs, Site Reviews | $ | 760.00 | fm - J. Casey | 8 hours at $95 per |
| Field manager-SPs, Site Reivews | $ | 950.00 | fm - J. terrance | 10 hours at $95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | $ | 9,500.00 | fm - R Hrovat | 100 hours at $95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | $ | 9,500.00 | fm - R Santoro | 100 hours at $95 per |
| Production-Site Visits, Production Maps | $ | 2,375.00 | prod coord- D. Gallagher | 25 hours at $95 per |
| Production-Production Maps & Binders | $ | 9,000.00 | prod - T. Pancura | 200 hours at $45 per |
| Production-Number Calculations | $ | 5,200.00 | prod - C. Zelgowski | 80 hours at $65 per |
| Production-SPs, Field Mangers, Training, Budgeting | $ | 3,800.00 | prod - R. Rieder | 40 hours at $95 per |
| Special Accounts Manager=Estimating, Point of Contact Info,, Training | $ | 9,500.00 | sac - B. Marshall | 100 hours at $95 per |
| Bus. Development | $ | 33,000.00 | bus devel - J Vernon | 200 hours at $165 per |
| Bus. Development | $ | 22,500.00 | bus devel - J Allin | 100 hours at $225 per |
| Human Resources | $ | 45,000.00 | h.r. - P Allin | 200 hours at $225 per |
| Accounting | $ | 1,140.00 | accounting - M Suleski | 12 hours at $95 per |
| new hire-field manager | $ | 9,500.00 | Dave Dzurisin- Chicago | 100 hours at $95 per |
| new hire-field manager | $ | 9,500.00 | Bryan Bone-DesMoines | 100 hours at $95 per |
| new hire -field manager | $ | 9,500.00 | Duane Rasataja-Minneapolis | 100 hours at $95 per |

| Expense | Date Incurred | Date Paid | Entity Paid | Amount of Expense | Affiliation to Allin Co/SMG | COMMENTS |
|---|---|---|---|---|---|---|
| Flight to Ft. Lauderdale-John Allin | 1/21/2004 | 1/21/2004 | Northwest Airlines | 233.9 | same | |
| Flight to Ft. Lauderdale-Jeff Vernon | 1/21/2004 | 1/21/2004 | Northwest Airlines | 207.9 | same | |
| Ground Transportation | 2/22/2004 | 2/22/2004 | | | same | |
| Hotel -JA & JV | 2/22/2004 | 2/22/2004 | Harbor Beach Resort & Spa Mariott | $0 | same | $319.00 paid by Heritage |

| Expense | AMOUNT | TOTAL |
|---|---|---|
| AIRFARE | $ 129.10 | |
| | $ 364.69 | |
| | $ 1,037.60 | |
| | $ 64.90 | |
| | $ 181.70 | |
| | $ 221.70 | |
| | $ 102.60 | $ 2,102.29 |
| HOTEL | $ 149.00 | |
| | $ 64.99 | |
| | $ 82.01 | |
| | $ 99.00 | |
| | $ 220.00 | |
| | $ 220.00 | $ 835.00 |
| FOOD | $ 75.00 | |
| | $ 150.00 | |
| | $ 125.00 | |
| | $ 125.00 | |
| | $ 125.00 | $ 600.00 |
| GROUND | $ 25.00 | |
| | $ 20.00 | |
| | $ 25.00 | $ 70.00 |
| **TRANSP. TOTAL** | **$ 2,102.29** | **$ 3,478.19** |
| | | |
| LABELS | $ 135.00 | $ 135.00 |
| ENV | $ 110.00 | |
| | $ 65.00 | $ 175.00 |
| PAPER | $ 78.00 | $ 78.00 |
| POSTAGE | $ 1,386.75 | $ 1,386.75 |
| COPIES | $ 537.50 | $ 537.50 |
| FAXING | $ 125.00 | $ 125.00 |
| SITE DATA ENTRY | $ 180.00 | |
| | $ 180.00 | $ 360.00 |
| PHONE CALLS | $ 1,080.00 | |
| | $ 1,080.00 | |
| | $ 1,080.00 | |
| | $ 1,080.00 | $ 4,320.00 |
| RFP DATA ENTRY | $ 360.00 | |
| | $ 6,175.00 | $ 6,535.00 |
| MGMT/PRODUCTION | $ 3,800.00 | |
| | $ 760.00 | |
| | $ 950.00 | |
| | $ 9,500.00 | |
| | $ 9,500.00 | |
| | $ 2,375.00 | |
| | $ 9,000.00 | |
| | $ 5,200.00 | |
| | $ 3,800.00 | |
| | $ 9,500.00 | |
| | $ 33,000.00 | |
| | $ 22,500.00 | |
| | $ 45,000.00 | |
| | $ 1,140.00 | |
| | $ 9,500.00 | |
| | $ 9,500.00 | |
| | $ 9,500.00 | $ 184,525.00 |
| **SUPPLIES/PERSONNEL TOTAL** | | **$ 198,177.25** |
| **GRAND TOTAL** | | **$ 201,655.44** |

| Expense | Date Incurred | Date Paid | Entity Paid | Amount of Expense | Affiliation | Alln Co/SMG | COMMENTS |
|---|---|---|---|---|---|---|---|
| **IV Travel expenses** | | | | | | | |
| **Brian Marshall Travel expenses** | | | | | | | |
| **Peggy Allin – Interviews** | | | | | | | |
| Airfare | 8/23/2004 | | Sun Country Airlines | $129.10 | | same | |
| Hotel | 8/23/2004 | 8/25/2004 | Courtyard Minneapolis-St. Paul Airp | $149.00+Tax | | same | |
| Airfare | 8/25/2004 | | Northwest Airlines | $364.69 | | same | |
| Meals 08/23/04-0825/04 | 10/18-10/23 | | various | $ 25.00 perdiem x 3 | | same | |
| Airfare | 10/18/2004 | | United Airlines | $1,037.60 | | same | |
| Hotel | 10/20/2004 | 10/20/2004 | Comfort Inn - Denver | $ 64.99 + tax | | same | |
| Hotel | 10/21/2004 | 10/21/2004 | Fairfield Inn & Suites - Minn/St. Paul | $ 82.01 + tax | | same | |
| Taxi | 10/22/2004 | | | $15.00 | | same | |
| Hotel | 10/22/2004 | | Radisson Hotel - Des Moines IA | $ 99.00 + tax | | same | |
| Meals 10/18-10/23 | 10/18-10/23 | | various | $ 25.00 perdiem x 6 | | same | |
| Erie to Cleveland | 10/25/2004 | 10/25/2004 | Anderson Airlink | $25.00 | | same | |
| Cleveland to Chicago | 10/25/2004 | | Continental | $64.90 | | same | * Had a $95.80 ecredit |
| Hotel | 10/25/2004 | 10/25/2004 | Fairfield Inn Chicago | 119.00-tax | | same | |
| Ground trans. Cleveland to Erie | 10/26/2004 | | John Allin | unknown | | same | personal or company? |
| **Duane Haataja Travel** | | | | | | | |
| Ground Transportation | 11/1/2004 | | ATA | $181.70 | | new hire | |
| | 11/1/2004 | | (picked up from Pitts. Airport | | | new hire | PJ Short picked up |
| Hotel 11/1/04 - 11/6/04 | | | El Patio Motel | $ 44.00 x 5 nights | | new hire | training @SMG |
| training 11/2 - 11/4/04 | | | | | | new hire | |
| **Bryan Robe Travel** | | | | | | | |
| Transportation from Cleve - Erie | 10/31/2004 | | ATA/Southwest | $221.70 | | new hire | |
| Hotel 10/31/04 - 11/4/04 | 10/31/2004 | | Anderson Airlink | $25.00 | | new hire | trans fr hotel to SMG |
| training 11/2/04 - 11/4/04 | | | | 0 | | new hire | roomed w/ D Dziuban |
| | | | | | | new hire | training @ SMG |
| **David Dziuban Travel** | | | | | | | |
| Transportation from Cleve - Erie | 10/31/2004 | | Southwest | $102.60 | | new hire | |
| Hotel 10/31/04 - 11/4/04 | 10/31/2004 | | Anderson Airlink | $20.00 | | new hire | trans fr hotel to SMG |
| training 11/2/04 - 11/4/04 | | | | $ 44.00 x 5 nights | | new hire | training @SMG |
| **Legal Council** | | | | | | | |
| **Supplies** | | | | | | | |
| Labels | | | | $ 135.00 | | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Business Envelopes | | | | $ 110.00 | | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Manilla Envelopes | | | | $ 65.00 | | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Paper | | | | $ 78.00 | | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Postage | | | | $ 1,386.75 | | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Copy Count | | | | $ 537.50 | | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| Faxing | | | | $ 125.00 | | SMG | 1075 PACKETS - RFP TO SVC PROVIDERS |
| **Personnel** | | | | | | | |
| sites entered in system | as of 11/8/04 | | | $ 180.00 | | Gossaudin, Beth | 4 hours at $.45 per |

H:\russell\Heritage Expense Log12/8/20052:42 PM

| John Allin | | |
|---|---|---|
| **Date** | **Tasks** | **Hours** |
| | | |
| 2/18/2004 | Preparation of presentation in FL | 10 |
| 02/22-02/24/04 | Trip to present SMG to Heritage | 48 |
| 04/15-04/27/04 | gather update info from Jeff, Brian, Rudy & Chet | 4 |
| 06/07-06/09/04 | Work with Brian & Jeff to align pricing | 8 |
| 08/19-08/26/04 | Correspondence with SP's in MN to do sites | 2 |
| 09/30-10/04/04 | Review & amend contract & SP Agreement | 8 |
| 10/8-10/09/04 | Review & initial revised contract | 2 |
| 10/26-10/28/04 | Several meetings on training of new FM's & contacting all Property Mgr's | 8 |
| 10/29-11/04/04 | Finalize & approve all FM's responsibilities for all sites & corresponding Property Mgr's | 10 |
| | | 100 |
| | | |
| Jeff Vernon | | |
| **Date** | **Tasks** | **Hours** |
| 02/16-02/19/04 | Preparation of presentation in FL | 20 |
| 02/22-02/24/04 | Trip to present SMG to Heritage | 48 |
| 5/23/2004 | Meeting w/Bob P in Las Vegas - negotiations | 2 |
| 06/07-06/09/04 | Work with John & Brian to align pricing | 10 |
| 6/16/2004 | Trip to Boston w/Mike Smallwood to meet with Bob P | 8 |
| 9/20/2004 | Trip to Rutland, VT to measure site and get SP | 16 |
| 8/2/2004 | Conference Call Heritage/SMG - moving forward | 2 |
| 08/03-08/05/04 | Follow up work from conference call - due diligence | 10 |
| 10/4-10/09/04 | Travel to Erie to work with Production Crew to complete sites, equipment, SP's, maps, etc. | 60 |
| 10/11-10/15/04 | Working on bid sheets, sites, SP's, production, equipment | 10 |
| 10/21-10/22/04 | Meetings in Erie - finalize info for RFPS to go out | 4 |
| 10/29-11/04/04 | Finalize & approve all FM's responsibilities for all sites & corresponding Property Mgr's | 10 |
| | | 200 |

| | | | |
|---|---|---|---|
| $ | 180.00 | ops-admin - Tina ... 4 hours at $ 45 per | sites entered in system |
| $ | 1,080.00 | ops-audit - Beth    24 hours at $45 per | phone calls |
| $ | 1,080.00 | ops-admin - Linda    24 hours at $45 per | phone calls |
| $ | 1,080.00 | ops-admin - Stacey    24 hours at $45 per | phone calls |

| Description | Amount | Person | Rate |
|---|---|---|---|
| phone calls | $ 1,080.00 | ops-admin - Tina | 24 hours at $45 per |
| rfp data entry | $ 360.00 | ops-admin - Linda | 8 hours at $ 45 per |
| rfp data entry | | | |
| Regional Manager-SPs, Site Reviews, Budgeting | $ 6,175.00 | ops mgr - L. Edwards | 65 hours @ $ 95 per |
| Field manager-SPs, Site Reivews | $ 3,800.00 | rm - Smallwood | 40 hours @ $95 per |
| Field manager-SPs, Site Reivews | $ 760.00 | fm - J Casey | 8 hours at $95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | $ 950.00 | fm - J. terrance | 10 hours at $95 per |
| Regional Manager-SPs, Site Reviews, Budgeting | $ 9,500.00 | rm - R Hrovat | 100 hours at $95 per |
| Production-Site Visits, Production Maps | $ 9,500.00 | fm - R Santoro | 100 hours at $95 per |
| Production-Production Maps & Binders | $ 2,375.00 | prod coord- D. Gallagher | 25 hours at $95 per |
| Production-Number Calculations | $ 9,000.00 | prod - T. Pancura | 200 hours at $45 per |
| Production-SPs, Field Mangers, Training, Budgeting | $ 5,200.00 | prod - C. Zelgowski | 80 hours at $65 per |
| Special Accounts Manager-Estimating, Point of Contact Info., Training | $ 3,800.00 | prod - R. Rieder | 40 hours at $95 per |
| Bus. Development | $ 9,500.00 | sac - B. Marshall | 100 hours at $95 per |
| Bus. Development | $ 33,000.00 | bus devel - J Vernon | 200 hours at $165 per |
| Human Resources | $ 22,500.00 | bus devel - J Allin | 100 hours at $225 per |
| | $ 45,000.00 | h.r. - P Allin | 200 hours at $225 per |

Accounting
$ 1,140.00 accounting - M Suleski 12 hours at $95 per

new hire - field manager $ 9,500.00 Dave Dziuban - Chicago 100 hours at $95 per
new hire - field manager $ 9,500.00 Bryan Rohe - DesMoines 100 hours at $95 per
new hire - field manager $ 9,500.00 Duane Haataja - Minneapolis 100 hours at $95 per

| Date | Description | |
| --- | --- | --- |
| 10/20/2004 | data enter some of the 110 sites into PAMS | 4 |
| 10/19/04 - 11/11/04 | Calls to prospective bidders and/or calls to confirm receipt of RFP package | 24 |
| 9/14/04 - 11/17/04 | Calls to and from prospective bidders re: confirmation of SPs to receive RFP packets, calls to SP to confirm receipt of RFP package, site specific questions re: scope of work, follow up calls regarding Symbiot not responsible for contract | 24 |
| 9/14/04 - 11/17/04 | Calls to and from prospective bidders re: confirmation of SPs to receive RFP packets, calls to SP to confirm receipt of RFP package, site specific questions re: scope of work, follow up calls regarding Symbiot not responsible for contract | 24 |

| Date | Description | Amount |
|---|---|---|
| 9/14/04 - 11/17/04 | Calls to and from prospective bidders re: confirmation of SPs to receive RFP packets, calls to SP to confirm receipt of RFP package, site specific questions re: scope of work, follow up calls regarding Symbiot not responsible for contract | 24 |
| 10/20/2004 | develop process re: software functionality to data enter Heritage account information and locations into PAMS | 8 |
| 10/20/2004 - 11/11/04 | develop process re: data entry of Heritage sites, SP proposals numbers, valid services, snowfall inches relative to scope for all Heritage account information and locations into PAMS | 65 |

| Dates | Hours | Reason |
|---|---|---|
| June 17,2004 | 4.00 | Search internet for local newspapers in various cities needed; contacting newspapers to gather info placing ads; present pricing to JA for approval to place ads |
| June 17 or 18th | 3.00 | Fax ads to various newspapers, confirmation and requesting/receiving tear sheets |
| lst of July | 4.00 | Separate resumes by state, put in excel documents for review, review resumes w/JA to start interview process |
| July/August | 4.00 | Sending e-mails for initial introduction to determine if good candidate to interview |
| 8/23/2004 thru 08/25/04 | 48.00 | Travel to MN for interviewing/interviewing time 8 hrs  Interviews on 24th |
| 09/30/2004 thru 10/01/04 | 3.00 | Fax ads to various newspapers, confirmation and requesting/receiving tear sheets |
| 10/07/04 to 10/08/04 | 4.00 | Separate resumes by state, put in excel documents for review, review resumes w/JA & JV to start interview process |
| 10/11/04 thru 10/15/04 | 25.00 | Call Center personnel training |
| 10/21/04-10/23/04 | 48.00 | Travel to MN to IA for interviewing (Interviews in IA were from 12 noon until 8 PM), 12 hrs on 22; 8 hr ea for 20/21 Interviews on 23rd were 7 AM until 11 AM then travel home |
| 10/25/04-10/26/04 | 27.00 | Traveled to Chicago for interviews - went out of Cleveland, took Airlink at 4:30 AM (Est 15 hours on the 25th; est another 12 hours on 26th, interviews started at 7 am |
| 10/27/04-10/29/04 | 10.00 | Job offers made, confirmation of travel arrangements, preparation of binders; |
| 10/29/2004 | 1.00 | Order trucks for new hires and coordinate with Rudy |
| 10/29/2004 -10/31/04 | 3.00 | notifying staff of agendas; first day binders, policies, insurance info |
| 10/31/2004 | 3.00 | Dinner w/David Dziuban, Bryan Rohe, JA @ Colony Restaurant |
| 11/01/04-11/03/04 | 10.00 | Training w/new hires |
| 11/8/2004 | 3.00 | Setup employee folders |

200.00

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERITAGE REALTY MANAGEMENT,       )
INC.,                             )
                    Plaintiff     )
                                  )
        v.                        )     CIVIL ACTION NO. 04-333 ERIE
                                  )
JOHN ALLIN d/b/a ALLIN            )
COMPANIES and SNOW MANAGEMENT     )
GROUP,                            )
                    Defendant     )

HEARING ON MOTION TO EXCLUDE EVIDENCE OF
ALLEGED TIME AND EXPENSE/SETOFFS

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Wednesday, January 11, 2006.

APPEARANCES:

        NEAL R. DEVLIN, Esquire, appearing on behalf of
        the Plaintiff.

        CRAIG A. MARKHAM, Esquire, appearing on behalf
        of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter



EXHIBIT
E

2

1                    P R O C E E D I N G S

2

3            (Whereupon, the proceedings began at 1:30 p.m., on

4     Wednesday, January 11, 2006, in Courtroom C.)

5

6            THE COURT:  We have a motion to exclude evidence of

7     alleged time and expense/setoffs.  Why isn't this a weight

8     issue?

9            MR. DEVLIN:  Your Honor, the reason we filed the

10    motion and why we believe it's not a weight issue is based upon

11    how we've come to this point.  Not to rehash, please feel free

12    to cut me off, but as you will recall, there was some initial

13    discovery, we had a settlement conference with you, at which

14    Mr. Allin was present.  During that conference the focus was on

15    the expenses that he's claiming are a setoff to the amount

16    Heritage has paid him.  We explained that we had summaries

17    based upon that.  There is a whole box of documents, but the

18    majority of them are these requests for proposals.  So it's

19    really the supplement.  And he indicated he thought there was

20    other source documentation he was going to get --

21            THE COURT:  That would substantiate the amount of

22    setoffs that were being claimed?

23            MR. DEVLIN:  Correct, your Honor.  We then went

24    through -- and he was going to get those to us in a certain

25    period of time, there was an extension, then a motion to

1   compel.  During that argument on the motion to compel, though

2   Mr. Lanzillo was here, where it was discussed the possibility

3   that if those documents existed, but they weren't produced,

4   there would be a sanction in the exclusion of all evidence.

5           THE COURT:  In other words, I went back and read it.

6   What I was trying to prevent from happening, in the event they

7   said we don't have them and all of a sudden they show up at

8   trial, as a sanction I was going to preclude the proof.

9           MR. DEVLIN:  Okay.  Correct, your Honor, that's how

10  I understood your order as well.

11          THE COURT:  But not to interrupt you -- in other

12  words, I actually say in there they can't be faulted for not

13  producing what they don't have.  They now say they've made a

14  search and don't have it.  Your position, I take it, remains

15  that as a factual matter, may cast even additional doubt as to

16  whether it can be substantiated.  But it isn't clear what you

17  want me to do right now?

18          MR. DEVLIN:  And, your Honor, here's why we filed

19  the motion and what we'd like you to do right now.  I do agree,

20  your Honor, that your order was that if the documents did not

21  exist and they would be required to rely upon their testimony,

22  there would not be an overarching sanction of producing what

23  you don't have.  Here's the problem we had when we received the

24  records.  The records are a very similar summary.  But a couple

25  of them, specifically with request to Mr. Allin, Mr. Vernon,

4

1    and at least two or three other unidentified people, have a

2    more specific break out of time.  The original records just

3    show a block of time, 200 hours.  Then you have a more specific

4    break out for -- let's take Mr. Vernon, for example.  There is

5    no -- clearly something that led to that more specific break

6    out.  But we don't know what that is.  If it is going to be

7    testimony, we noticed the deposition of Mr. Vernon, but were

8    told -- by Mr. Markham, we just had actually a conversation

9    about it, has been in conversation with him, but he's not in a

10   position to produce him.  It appears he's in Connecticut.

11              THE COURT:  He's no longer an employee?

12              MR. DEVLIN:  Yes, apparently all of the individuals

13   who were noticed are no longer employees.

14              THE COURT:  Let me just interrupt -- Mr. Markham,

15   did I see in the paper was the company sold?

16              MR. MARKHAM:  It was sold and Mr. Allin was fired,

17   yes.

18              THE COURT:  So we're even farther down the road now.

19              MR. MARKHAM:  Unfortunately.

20              THE COURT:  Well, we'll talk about the upshot of

21   that in a minute.

22              MR. DEVLIN:  And, your Honor, the problem we now

23   have is that there is this more specific break out as to some

24   individuals --

25              THE COURT:  Is there still an Allin Companies, is it

5

1    still called Allin Companies, do you know?

2            MR. MARKHAM:  There is a local outfit still called

3    Allin Companies, principally doing local landscaping and local

4    snow removal.

5            THE COURT:  All right.

6            MR. MARKHAM:  Allin Companies is a fictitious name

7    of Snow Management Group.

8            THE COURT:  So, anyway, getting back to the point

9    here.

10           MR. DEVLIN:  Your Honor, with respect to every one

11   on there, other than John and Peggy Allin, we have noticed

12   depositions.  Not everybody on that list, but those people that

13   sort of had a big chunk of time.  We've been told that Mr.

14   Allin is not in a position to produce those people for us to

15   depose.  So we are then left back in the very position that

16   your Honor, we believe, had contemplated in that motion to

17   compel, that we have a summary of information, we don't have

18   any original source documentation.  And as to testimonial

19   support for it, we've now been informed we're not able to get

20   the depositions, absent tracking these people down and

21   subpoenaing them, if they're even appearing within this

22   jurisdiction.  So it's for that reason that we're asking at

23   this point in time --

24           THE COURT:  Well, let me ask you this.  There are

25   some people, John Allin and his wife, who are around here and

1    who are available to be deposed, correct?

2            MR. DEVLIN:  Correct, your Honor.

3            THE COURT:  I take it that their work, in part,

4    according to the defendant's theory, represents a portion of

5    the setoff claimed?

6            MR. DEVLIN:  Yes, your Honor.

7            THE COURT:  These other two or three individuals who

8    are no longer -- obviously, they're not employees, the company

9    has been sold, but who are no longer around here and subject to

10   Mr. Markham's control, do you know where they are?

11           MR. DEVLIN:  I don't, your Honor.  I know that Mr.

12   Markham has spoken to Jeff Vernon in Connecticut.  As to the

13   other individuals, I don't know where they are.  And I'll let

14   Mr. Markham speak as to whether he knows or not.  But I have

15   not been told where they are.

16           THE COURT:  Well, were more specific time records as

17   to these individuals supplied but without what you feel is the

18   supporting documentation?

19           MR. DEVLIN:  As to Jeff Vernon, yes.  As to Jeff

20   Vernon, we originally had a block of time.  We now have a break

21   out of dates, and we don't know where that is coming from.  And

22   there are other -- your Honor, I won't pull it out now, with

23   the format it's difficult to tell where the break off is.

24   There are two, possibly three other summaries that don't

25   indicate the individual's name, but indicate a more specific

1    break out of time.  So we don't even know who those individuals

2    are.  But it's pretty clear that they're not John Allin or

3    Peggy Allin.  So we're stuck in a position where we have an

4    expense claim, no source documentation to support it and no

5    ability to delve into testimony of these people supposedly that

6    did the work.  For that reason we're asking, your Honor --

7                  THE COURT:  Still at time of trial it's going to be

8    their burden to substantiate it.  I mean, why is this different

9    than -- why isn't this a garden-variety situation that often

10   happens, where people who are employees no longer are, and you

11   got to go -- in this case the defendant, but attempting to

12   establish a counterclaim, which he's functionally the

13   plaintiff, needs to either go track him down and wheel him in

14   or suffer the consequences.  What are you worried about?

15                 MR. DEVLIN:  Your Honor, in all candor I do agree

16   that if our motion is denied, we'll probably be back up here on

17   a motion in limine or something along those lines prior to

18   trial at the close of discovery.  What we're worried about now

19   is as the sequence of this has come, there have been

20   representations made by Mr. Allin that these things existed.

21   He's produced a summary of records that must be based upon

22   something.  Now, discovery actually closes today, which is

23   something I know, I'm sure Mr. Markham and I want to discuss

24   with the court as well.  But we're at the close of discovery,

25   we have none of the source documentation that we asked for, and

1    we've been told the individuals who we are planning on deposing

2    are not, they can't produce those individuals.  So we don't

3    know, quite frankly, what we're going to be hit with

4    afterwards.  And I'm not saying, I don't think anyone is trying

5    to hide anything from us, but at this point in time discovery

6    is nearing an end, there is no support for any of this.  Now,

7    based upon what happened at the motion to compel, that's why we

8    phrased it as a motion to exclude.  But I do agree with your

9    Honor that if the court denies that motion, I'll be back here

10   making a very similar argument on a motion in limine.

11           THE COURT:  Isn't the time to make a motion in

12   limine at trial -- I mean by that time we will know, because of

13   the passage of time that will have gone by, who was deposed,

14   what happened, who's on the witness list, that's all in the

15   future?

16           MR. DEVLIN:  I agree, your Honor.  The reason we

17   filed the motion and did not wait for that is based upon the

18   representations Mr. Allin made and how this came about.

19           THE COURT:  All right, let me talk to Mr. Markham

20   for a minute.  Give me your position in a nutshell here?

21           MR. MARKHAM:  Well, it's simply this.  In response

22   to the specific motion for sanctions, it's clear we produced

23   everything we could find.  Mr. Allin, when he was here, had

24   indicated that he thought the records existed.  He was

25   incorrect, he searched and his staff has searched, and only

1   found one other document, a multi-page document, which has been

2   produced and given to plaintiff's counsel.  Which is a summary,

3   much like the previous summaries given.  It was created a long

4   ago, it wasn't created recently, which provides information

5   which came from, basically, my client's review and

6   recollections of what had transpired.  There are no other

7   records of a source nature or really anything that's responsive

8   to their requests --

9            THE COURT:  Would it be accurate to say in general,

10  that the time summaries that had been supplied, the hours

11  worked, what was done, were the creation of a collective

12  memory, as opposed to any hard documentation?

13           MR. MARKHAM:  For the most part, that's correct.

14  There are some documents that we were going off of, like

15  airplane ticket receipts, things of that nature, which kind of

16  placed them in time for certain events.  But for the most part,

17  besides that --

18           THE COURT:  It was a reconstruction by memory?

19           MR. MARKHAM:  By memory.

20           THE COURT:  Doesn't that tell you a lot right there,

21  I mean it's a reconstruction by memory.  It may not be the best

22  way to try to prove your case but it's a weight issue, isn't

23  it?

24           MR. DEVLIN:  And, your Honor --

25           THE COURT:  If that's all there is, that's all there

10

1  is?

2        MR. DEVLIN:  I agree, your Honor.  However, if it's

3  a collective memory, the only people who apparently we're going

4  to be able to depose are Mr. Allin and Mrs. Allin, I'd like to

5  know if there's anyone else in that collection.

6        THE COURT:  Well, we're looking down the road,

7  but -- if this thing keeps jumping along toward trial, what

8  about these other individuals that are all spread into the four

9  winds, are you going to bring them in to substantiate your

10  claims?

11        MR. MARKHAM:  I don't think so.  The memories we're

12  talking about are the memories of the people here.  We didn't

13  talk to --

14        THE COURT:  In other words, Mr. and Mrs. Allin, if

15  you will, not only reconstructed their own time, but based on

16  their personal observations, if you will, reconstructed the

17  other folk's time, is that right?

18        MR. MARKHAM:  That's correct.

19        THE COURT:  That's how the case would come on, it's

20  not your intention to bring these people in as live witnesses

21  in support of your setoff claim, is that right?

22        MR. MARKHAM:  I think that's correct.  The only

23  potential witness will be Jeff Vernon, only because he was more

24  intimately involved in some of the preparation work.  But

25  beyond that, even that's speculation.

1        THE COURT:  Is he the fellow who's in Connecticut?

2        MR. MARKHAM:  He's in Connecticut.  I had indicated

3   to Mr. Lanzillo that all of these people are not within our

4   control, if he wanted, we could try to contact them or act as a

5   liaison.

6        THE COURT:  But if you're not going to bring them

7   in, I don't see the point of anybody going off to depose them.

8        MR. MARKHAM:  Well, that was up to him.  I just said

9   if he wanted to do that, we'd try to help him.

10        THE COURT:  All right, let me do a quick order and

11   then I want to talk to you about a few things.  This an order.

12                          ORDER

13        With respect to the Motion to Exclude Evidence of

14   Alleged Time and Expense/Setoffs, based upon the discussion

15   we've had here today, the motion is denied.

16        Now, let's go off the record.

17        (Discussion held off the record.)

18        THE COURT:  We're back on the record, what about

19   discovery?

20        MR. DEVLIN:  Well, your Honor, we have depositions

21   scheduled right now.  I think the discovery cutoff is today or

22   tomorrow.

23        MR. MARKHAM:  I think it's today.

24        MR. DEVLIN:  Given this motion, we had held off on

25   deposing Mr. and Mrs. Allin because we didn't know what we

12

1    would be inquiring into.  We now have their depositions

2    scheduled, I believe for the 21st and 23rd now or something

3    around there.  And Craig has depositions scheduled immmediately

4    before that by video.  So what I was going to request, your

5    Honor, would be a 20-day extension of all deadlines.  I think

6    that would accommodate what we were planning on doing.

7            THE COURT:  All right.  Does that wrap up yours,

8    too?

9            MR. MARKHAM:  I believe it will.  I'm expecting two

10   witnesses that I want to depose, would be in the universe of

11   people I need to speak to.

12           THE COURT:  Is there going to be summary judgment

13   filed in this case?

14           MR. DEVLIN:  I believe there will be, your Honor, I

15   think we will.

16           THE  COURT:  All right.  We'll extend discovery for

17   20 days, all other relevant scheduling dates are moved

18   accordingly.

19           (Discussion held off the record.)

20

21           (Whereupon, at 1:46 p.m., the proceedings were

22   concluded.)

23

24                - - -

25

13

1                        C E R T I F I C A T E

2

3

4          I, Ronald J. Bench, certify that the foregoing is a

5     correct transcript from the record of proceedings in the

6     above-entitled matter.

7

8

9

10     _____

11     Ronald J. Bench

12

13

14

15

16

17

18

19

20

21

22

23

24

25