IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERITAGE REALTY MANAGEMENT, INC., | ) ) | Case No.  CA 04 - 333 ERIE |
| Plaintiff | ) ) | Judge Sean McLaughlin |
| v. | ) ) | |
| JOHN ALLIN d/b/a ALLIN COMPANIES, Defendant | ) ) | TRIAL BY JURY OF 12 DEMANDED |

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
IRRELEVANT, PREJUDICIAL EVIDENCE**

I.      BACKGROUND

1. Defendant files this motion in limine to preclude irrelevant and prejudicial evidence relating to the claim of anticipatory breach of contract, relating to the claim that Defendant had failed to disclose the anticipated sale of his business and relating to Defendant's outstanding and unpaid debt to vendors.

2. On November 15, 2004, the Plaintiff filed its complaint which contained two counts.  Count I alleged a claim of fraud based upon the Plaintiff's contention that prior to entering into the contract to furnish snow removal services to Plaintiff, the Defendant, John Allin, had "made material misrepresentations . . . concerning his financial condition" and thus had fraudulently induced Plaintiff into entering into the parties' contract. *Complaint, ¶6*. This claim

related to the fact that Mr. Allin allegedly had sizable unpaid obligations owed to a number of plow operators. Although Plaintiff had seven or eight months to perform its due diligence investigation prior to signing the contract with Mr. Allin, it claims that it did not investigate Mr. Allin's financial condition.

   3. Count II of the complaint alleged a claim for breach of the contract arising from Mr. Allin's refusal to refund to the Plaintiff the first of seven installment payments which was made by the Plaintiff. Plaintiff claimed that, as of the date of termination, Mr. Allin had not performed any snow plowing work and that, therefore, he was not entitled to keep the installment payment.

   4. On August 24, 2005, Plaintiff sought leave of court to amend the complaint to voluntarily "eliminat[e] its original fraud count" and to only assert "a single count sounding in breach of contract." *Motion for Leave, ¶5*. [Doc. 24]. Clearly, there was no evidentiary support for the claim of fraudulent inducement. The first amended complaint [Doc. 26] was then filed on September 12, 2005.

   5. On February 17, 2006, the Plaintiff filed a motion for leave to file a second amended complaint [Doc. 36] to add a new claim arising from Mr. Allin's sale of his snow management business to Symbiot Snow Management Network, LLC and Symbiot Business Group, Inc. (collectively "Symbiot"). The sale to Symbiot was a solution to Mr. Allin's outstanding and unpaid debt to business vendors. In its second amended complaint, Plaintiff

purported to assert a cause of action in anticipatory breach of contract based upon Plaintiff's claim that the asset sale to Symbiot rendered Mr. Allin "physically and legally unable to perform his obligations" to the Plaintiff. *Second Amended Complaint, ¶12*.

6. However, the sale to Symbiot could not have supported a claim for anticipatory breach of the contract. That asset sale to Symbiot took place on or about November 22, 2004 (J. Allin depos., pp. 6, 79. A copy of Mr. Allin's deposition transcript is attached as Exhibit B to Plaintiff's Concise Statement of Facts [Doc. 42]). Mr. Allin signed the contract with Heritage almost two (2) months earlier, on October 4, 2004. Thus, at the time signing the contract with the Plaintiff, there was nothing to tell Heritage.

7. Moreover, Plaintiff had terminated its contract with Mr. Allin by letter dated November 3, 2004. Therefore, the Symbiot sale actually occurred about three weeks <u>after</u> the contract with Heritage came to an end. In fact, it was not until January 23, 2006, during Mr. Allin's deposition, that Plaintiff had first became aware of this asset sale. *Plaintiff's Motion for Leave, ¶6*. Therefore, at the time of this alleged anticipatory breach, there was no longer any contract between the parties.

3.

II.  **EVIDENCE RELATING TO SALE TO SYMBIOT AND RELATING TO MR. ALLIN'S DEBT MUST BE PRECLUDED AS IRRELEVANT**

8. The parties' contract provided that Plaintiff could terminate the contract "without any cause whatsoever." *Contract, ¶17*. In fact, Plaintiff's termination letter of November 3, 2004 states that Plaintiff was invoking this unqualified right. A copy of the termination letter is attached as Exhibit E to Plaintiff's Concise Statement of Facts.

9. Therefore, the newly concocted theory of anticipatory breach, allegedly arising from Mr. Allin's asset sale to Symbiot, is superfluous.

10. Moreover, this cause of action has no application here because Heritage had terminated the contract weeks *prior* to the closing of the Symbiot asset purchase. The act which Heritage contends constituted an anticipatory breach of its contract was Mr. Allin's asset sale to Symbiot. That sale closed on November 22, 2004. Heritage terminated the contract with Mr. Allin by letter dated November 3, 2004. At that point, the contract was no longer in effect and the sale to Symbiot was weeks away. There can be no anticipatory breach of a contract which has already ended.

11. Moreover, a cause of action for anticipatory breach of contract arises from acts which, by necessity, transpire before the date of performance and of which the non-breaching party must be fully aware. There is no such thing as a stealth anticipatory breach. The essence of

4.

the cause of action is that the defendant conveys to the plaintiff "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." McCloskey & Co. v. Minweld Steel Co., 220 F.2d 101, 104 (3rd Cir. 1955). Even the receipt by plaintiff of such an unequivocal and direct statement is not the end of the matter because the plaintiff can choose to either accept this notice and consider the contract at an end or disregard this notice and wait for the date of performance. "If [the Plaintiff] does not promptly and unequivocally accept the tender, the contract remains in full force and effect according to its terms, for the benefit of both parties to it." McCormick v. Fidelity & Casualty Co. of New York, 161 A. 532, 533 (Pa. 1932); See also Huessener v. Fishel & Marks Co., 127 A. 139, 140 (Pa. 1924) ("mere notice of an intended breach [of contract] is not of itself a breach of the contract. It may become so if accepted and acted upon by the other party."); Franconia Assoc. v. United States, 536 U.S. 129, 143 (2002) ("such a repudiation ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such'"). Therefore, in order to sustain this claim, the facts must show that, before the contract came to an end, Heritage was fully aware of those actions it now alleges support a claim for anticipatory breach.

       12. It would appear that Heritage added the cause of action for anticipatory breach so that it could argue to the jury that Mr. Allin had misled or fraudulently induced Plaintiff into entering into the contract by failing to disclose the situation with Symbiot. Since Heritage had previously withdrawn its claim of fraud, it concocted the ill-fitting theory of anticipatory beach in an attempt to create a pretextual foundation for the introduction of otherwise irrelevant and prejudicial evidence regarding the failure to disclose the Symbiot sale. By claiming relevance

to the anticipatory breach theory, it is also anticipated that Plaintiff would attempt to prejudice Mr. Allin in the eyes of the jury by introducing evidence of Mr. Allin's financial condition as it related to the debts owed to plow operators. Of course, this prejudicial evidence has no relevance to the issues here in dispute.

13. The introduction of this irrelevant evidence relating to or concerning Mr. Allin's failure to disclose to Plaintiff the anticipated asset sale to Symbiot and evidence of Defendant's outstanding unpaid obligations to plow operators would serve only to prejudice the Defendant in the eyes of the jury.

WHEREFORE, the Defendant respectfully requests this Honorable Court enter an order precluding the Plaintiff from introducing evidence relating to or concerning Mr. Allin's failure to inform the Plaintiff of the Symbiot sale and the amounts or existence of Defendant's debts at the time that the parties signed their contract.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By  /s/ Craig A. Markham
    Craig A. Markham, Esquire
    Attorney for Defendant
    150 East Eighth Street
    Erie, Pennsylvania 16501
    (814) 456-4000