IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERITAGE REALTY MANAGEMENT, INC., | ) | Case No. CA 04 - 333 ERIE |
| Plaintiff | ) | Judge Sean McLaughlin |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN ALLIN d/b/a ALLIN COMPANIES, | ) | |
| Defendant | ) | TRIAL BY JURY OF 12 DEMANDED |

**DEFENDANT'S BRIEF IN OPPOSITION TO
MOTION IN LIMINE TO PRECLUDE EVIDENCE OF
ALLEGED PRE-CONTRACT EXPENSES**

I.   PROCEDURAL BACKGROUND

The Plaintiff has filed a motion in limine [Doc. 82] to preclude the introduction into evidence of the Defendant's performance of a discrete part of the work and services which were an essential part of the obligations imposed under the parties' contract. In this way, Plaintiff seeks to deny Defendant the ability to recover a set-off for this particular work. Although the motion does not dispute the essential nature of the work performed by Defendant, John Allin, and does not dispute that Plaintiff had insisted that the work be performed, the Plaintiff seeks to preclude a set-off to that extent that this work was performed before the final contract had been

signed by the parties.  The Plaintiff's motion does not take issue with any of the work performed after the contract was signed.[1]

Plaintiff's motion must be denied because this essential work is compensable under paragraph 17 of the parties' contract which requires the Plaintiff to pay Mr. Allin for "all work and services performed."  However, if, as the Plaintiff now argues, this work is not part of the contract, then Mr. Allin is entitled to recover under the legal principle of promissory estoppel.  Moreover, the evidence relating to this pre-contract work is relevant to the issues which Plaintiff will raise including Mr. Allin's capabilities of performing under the contract and his good faith conduct.

II.     BACKGROUND

At all times relevant, Plaintiff, Heritage Realty Management, Inc. ("Heritage"), operated and/or owned various commercial properties in no fewer than fifteen states.  In January or February, 2004, Heritage began discussions with Mr. Allin, to have Mr. Allin perform snow and ice removal work at approximately 110 of these commercial sites.  *Allin affidavit, ¶3*.[2]

---

[1] Plaintiff has filed a separate motion in limine to exclude evidence of all work and expenses, regardless of the date on which the work was performed. [Doc. 83].  In that motion, Plaintiff does not dispute the essential nature of the work or that Plaintiff had demanded that the work be performed.  These motions rehash the same claims which were rejected previously by the Court.  For instance, Plaintiff had previously filed a motion for sanctions to exclude this evidence [Doc. 32] and filed a summary judgment motion [Doc. 40] seeking entry of judgment against Mr. Allin on the merits of the set-off claim.  On both occasions, the court rejected Plaintiff's arguments.

[2] Mr. Allin's affidavit is attached as Exhibit B to Defendant's Appendix [Doc. 60] previously filed in opposition to Plaintiff's summary judgment motion.

At a meeting of Heritage's regional managers in February, 2004, Heritage's president introduced Mr. Allin as *the* person who would be in charge of the snow removal operations during the winter of 2004-05. *Allin affidavit, ¶2; J. Allin depos., pp. 44-45*.[3] At that point, Mr. Allin concluded that "we already had their business." *Id., p. 45*. Heritage and Mr. Allin then began working together to prepare for the upcoming winter season. The critical components of the snow removal operations included the preparation and validation of detailed specifications and other needed information regarding the approximately 110 sites to be plowed. Mr. Allin's employees visited each site to precisely delineate the geographic boundaries designated for plowing, to determine appropriate locations for the deposit of large accumulations of plowed snow and to otherwise more precisely define the topography and scope of the various work assignments. *Allin affidavit, ¶3*. Additionally, names and addresses of prospective plow operators were obtained and requests for proposals were published. *Id.* The plowing operations could not be provided without completing this work. At issue here is the fact that some, but certainly not all, of this essential work was performed before the contract was actually signed.

Before the final, formal agreement was signed, Heritage had demanded that Mr. Allin commence this tremendous amount of work and services which was absolutely essential to the performance of the snow removal work at all of these numerous sites. As the 2004 winter season approached, the need for this necessary work took on an added urgency. *J. Allin depos., p. 63*. Mr. Allin has described this push from Heritage as follows:

---

[3] Mr. Allin's deposition transcript is attached as Exhibit B to Plaintiff's Concise Statement of Facts [Doc. 42] previously filed in support of its summary judgment motion.

3.

> Oh, my goodness, that started back in August [2004]. They were just unmerciful about ["] have you hired anybody yet, and do you have people yet, and have you contacted service providers, and we need to get this going, and you're not going to be able to perform.["]

*Id.*

The final version of the parties' contract was signed by Mr. Allin on October 4, 2004. Plaintiff signed it on October 12, 2004.[4] After the contract was signed, Mr. Allin continued with and stepped up his preparatory work so as to be fully ready for the snow season. By letter dated November 3, 2004, and without any prior warning, Heritage provided the ten (10) days notice of termination.[5] However, Heritage could not just walk away without paying for the work performed by Mr. Allin. In fact, paragraph 17 of the contract provided that "Heritage shall pay [Allin] for all work or services performed and equipment and materials supplied to the date of termination."

Following Heritage's termination of the contract, Mr. Allin submitted to Heritage an itemized summary of work and services performed, which included some time spent before the contract was signed. Heritage refusal to credit Mr. Allin for any of the work performed, regardless of when the work was done. Now, Heritage seeks to preclude the introduction of

---

[4] A copy of the contract is attached as exhibit C to Plaintiff's Concise Statement of Facts [Doc. 42].

[5] A copy of the November 3, 2004 ten (10) day notice is attached as exhibit E to Plaintiff's Concise Statement of Facts.

evidence of that work which was performed as requested by Heritage before the contract was signed.

III.        DISCUSSION

A.  FACTUAL DISPUTES REMAIN AS TO THE MEANING OF THE CONTRACT TERMS

Heritage's motion must be denied because there remain many questions of material fact relating to what is meant by the contract language "<u>all</u> work and services performed and equipment and materials supplied through the date of termination."  Heritage's motion is premised on the argument that this phrase only permits a credit for work performed after the contract was signed.

However, this phrase is susceptible to more than one reasonable interpretation. First, the phrase must be read in the context of the undeniable fact that Heritage had demanded that Mr. Allin perform work before the final version of the contract was signed.  Thus, not only was Heritage fully aware of these vital pre-contract activities, but it had actually mandated them. Heritage's chief operating officer testified that before the contract was signed he had directed Mr. Allin "to make sure that they were ready to fulfill the obligations under the contract including entertain[ing] proposals or negotiat[ing] with subcontractors to perform the work.  *Prendergast*

5.

*depos., pp. 8-9, a copy of which is attached as Exhibit D to Plaintiff's Concise Statement of Facts. [Doc. 42].*

In an e-mail from Mr. Prendergast dated August 3, 2004, which he sent to Heritage's various managers, he directed his employees to prepare information regarding "any special snow handling requirements so [SMG] can be <u>fully prepared</u>" for each site. (emphasis added). *A copy of Prendergast's e-mail is attached to Defendant's Appendix [Doc. 60] as Exhibit "Q.* Prendergast also confirmed that after the contract was signed, SMG "was in contact with some of our incumbent snow removal contractors" to elicit proposals from them. *Prendergast depos., p. 19.* Similarly, in an August, 2004 conference call, there was a general discussion with Snow Management Group concerning the need for preparatory work, including "getting people in place to manage the various sites." *Zicht depos., p. 10, a copy of which is attached as Exhibit A to Plaintiff's Concise Statement of Facts. <u>See</u> <u>also</u> J. Allin depos., p. 63* (Heritage was "just unmerciful about" the demand for preparatory work).

Since this work was essential to Mr. Allin's ability to perform, there is no reason for the parties to have imposed a temporal cut-off for payment for this work in the event of a unilateral termination of the contract by Heritage. Clearly, if Heritage exercises its option to terminate, the contract itself does not limit Heritage's obligation to pay for "all work" to only that work which was performed after the signing of the contract. The operative clause requires that Heritage pay for "<u>all</u> work or services performed and equipment and materials provided." This clause must include the essential preparatory services and work, in addition to actual snow

plowing and ice removal work which the contract specifically defines as "Operations." *Contract, p. 1 "Description of Operations."* If the parties intended to limit the reference to "services or work" in paragraph 17 to include only snow plowing work, they certainly would have used the word "Operations." In light of Heritage's demands that the work be undertaken immediately, before the contract was signed, it is more reasonable (and clearly more equitable) to conclude that, in the event of a termination by Heritage, the parties intended this clause of paragraph 17 to include that work performed before the contract was signed. Therefore, Heritage's motion must be denied.

### B.  FACTUAL DISPUTES REMAIN AS TO DEFENDANT'S CLAIM OF PROMISSORY ESTOPPEL

Heritage argues that the work and services which it had demanded to be performed by Mr. Allin before the contract was signed is not covered by the terms or conditions of the contract. See *Plaintiff's brief, p. 4*. Although Mr. Allin disputes this strained reading of the contract, it is in just such a situation that the doctrine of promissory estoppel applies. When a party's claims are not enforceable under the contract, "the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." Crouse v. Cyclops Industries, 745 A.2d 606, 610 (Pa. 2000). See also Pennsy Supply, Inc. v. American Ash Recycling Corp., 895 A.2d 595, 604 (Pa. Super. 2006) ("promissory estoppel is used to enforce a promise not otherwise" enforceable under a contract). "In an effort to remedy

7.

the injustice caused by a promise that is reasonably relied upon and then broken the courts have awarded damages where justice requires." Thompson v. Schriver, 57 D.&C.4th 157, 161-162 (Jefferson Co. 2002). The fact that Plaintiff demanded that Mr. Allin perform the work here at issue distinguishes our case from the cases relied upon by Plaintiff. In both Drysdale v. Woerth, 153 F. Supp. 2d 678 (E.D. Pa. 2001) and Curran v. Smith, 149 F. 945 (3rd Cir. 1906) there was no evidence presented to indicate that pre-contract work was demanded. In Drysdale, the tenant made substantial improvements to the leased premises before a lease extension was negotiated and signed. In Curran, the court actually determined that the costs at issue were not "incurred at the insistence or request of the defendants." Id. 149 F. at 953.

Thus, to the extent that the pre-contract work and services performed by Mr. Allin are found not to be governed by the parties' written contract, the doctrine of promissory estoppel applies to permit Mr. Allin to recover a credit for all such work and services. Therefore, Heritage's motion must be denied.

### C. THE EVIDENCE IS ADMISSIBLE AS BEING RELEVANT TO OTHER ISSUES

Independent of Mr. Allin's claims of set-off, the evidence of the work and services performed by Mr. Allin prior to the signing of the parties' contract is clearly relevant to the Plaintiff's argument that Mr. Allin was incapable of completing the contract and that he otherwise acted in bad faith in his dealings with Heritage. The nature and extent of all of the work which

Mr. Allin performed in furtherance of the contract would refute and counter any arguments that Mr. Allin was incapable of performing the work required under the contract. Moreover, the efforts expended by Mr. Allin even before the contract was signed would clearly refute the claim that he was somehow acting in bad faith in his contractual dealings with Heritage. In fact, Mr. Allin was going above and beyond what many people would do in the absence of a signed contract. Therefore, the evidence would be admissible for these purposes even if the evidence was not admissible on the issue of damages.

Therefore, the motion filed by Heritage to preclude the introduction of this evidence must be denied.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By /s/ Craig A. Markham
Craig A. Markham, Esquire
Attorney for Defendant
150 East Eighth Street
Erie, Pennsylvania 16501
(814) 456-4000

9.