IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERITAGE REALTY MANAGEMENT, INC., | ) | Case No. CA 04 - 333 ERIE |
| Plaintiff | ) | Judge Sean McLaughlin |
| v. | ) | |
| JOHN ALLIN d/b/a ALLIN COMPANIES, | ) | |
| Defendant | ) | TRIAL BY JURY OF 12 DEMANDED |

**DEFENDANT'S BRIEF IN OPPOSITION TO
MOTION IN LIMINE TO LIMIT TRIAL TO
EVIDENCE OF ANY CONTRACTUALLY PERMITTED SET-OFF**

I.     BACKGROUND

   A. Procedural History

The Plaintiff has filed a motion in limine [Doc. 84] to preclude the jury from considering Defendant's argument that under the terms and conditions of the subject contract, the Plaintiff is not entitled to any refund of the first installment made to the Defendant. It is Defendant's position that neither the contract language nor a reasonable interpretation of the contract would permit the Plaintiff to recover a full refund of its first installment payment. The Plaintiff previously filed a motion for summary judgment seeking the entry of judgment on this issue. The Court denied that summary judgment motion in its entirety. Nevertheless, the Plaintiff argues that the Defendant is now foreclosed from presenting the issue to the jury because the

Court indicated that it read the contract so as to permit a refund of the first installment, subject to any offsets.

### B. The Heritage Contract Provides for Payment of a Fixed Fee

It is not disputed that the contract provided for an annual fixed-fee, to be paid by Heritage in seven (7) periodic installments spread out from October, 2004 through May 15, 2005. See *Heritage Contract, ¶6(a), a copy of which is attached to the original Complaint ("The annual contract price for the operations is a fixed annual price")*. Since the contract provided for a fixed fee, the fees had to be paid by Heritage regardless of the number of snow days and regardless of the volume of snow that was needed to be plowed by Mr. Allin. Thus, if less snow fell than normal and less plow work was performed, Mr. Allin would nevertheless be entitled to full payment under the contract. The specific amounts owed by Heritage under the contract were not to be calculated based upon the amount of work actually performed. Heritage does not dispute this fact.

In October, 2004, upon signing the contract, Heritage then made its first of seven scheduled payments to Mr. Allin. The amount of this first installment payment was in the amount of $340,482.90 which was ten percent of the total contract price. By letter dated November 3, 2004, Heritage then wrote to Mr. Allin to terminate the contract. See *Heritage's Nov. 3, 2004 letter, a copy of which is attached as Exhibit E to Plaintiff's Concise Statement*. [Doc. 42]. At that point, approximately 14% of that snow season had elapsed. (The contract required payments

for a period of seven (7) months, October to May).  Thus, the ten percent (10%) payment coincided roughly with this elapse of time.

Although Mr. Allin was not required to perform any minimum amount of work under the contract as a condition precedent to Mr. Allin's entitlement to any of the seven installment payments, Heritage demanded a return of its first installment based upon the claim that Mr. Allin had not yet plowed any snow and thus had "not provided services or supplied any equipment or materials."  See *Heritage's Nov. 3, 2004 letter, p. 2*.[1]  In addition to being irrelevant to the amounts owed under the contract, this claim is also factually incorrect as Mr. Allin had performed a great deal of services and provided materials in order to be ready and able to perform as required by the contract and as previously demanded by Heritage.

II.    DISCUSSION

A.  The Denial of Summary Judgment Is Not a Ruling on the Merits

It is clear that the denial of a summary judgment motion does not constitute a ruling on the merits of the claims presented.  As the Supreme Court has ruled, "the denial of a motion for a summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim.  It is strictly a pretrial order that decides

---

[1] Although the termination letters also claim that Heritage was "fraudulently induced" to enter the contract, Heritage has abandoned all causes of action based upon accusations of fraud because of the absence of evidence of fraud.

only one thing – if the case should go to trial." Switzerland Cheese Assoc., Inc. v. E. Horne's Market, Inc., 87 S. Ct. 193, 195 (1966).

Since the Court did not enter judgment in the Plaintiff's favor on this particular issue, the matter remains unresolved and must be submitted to the jury for its decision. Therefore, the Plaintiff's motion in limine must be denied.

### B. Plaintiff Cannot Rewrite the Contract

"In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." Tuscarora Wayne Mutual Ins. Co. v. Kadlubosky, 889 A.2d 557, 560 (Pa. Super. 2005). The court should "not rewrite the contract." Lindstrom v. Pennswood Village, 612 A.2d 1048, 1051 (Pa. Super. 1992). If the intent of the parties cannot be gleaned from the written contract due to uncertainty or ambiguity as to the meaning of the written words used by the parties, then the issue must be submitted to the jury. Insurance Adjustment Bureau, Inc. v. Allstate Insurance Co., 2006 WL 2431634 ( Pa. 2006) *4. "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. " Id. See also, Chester Upland School Dist. v. Edward J. Meloney, Inc., 901 A2d 1055, 1060 (Pa. Super. 2006) ( the question of the existence of an ambiguity "is not to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts").

The contract between the parties has an initial term of one year with "a fixed annual price." Heritage is required to pay Mr. Allin the annual price in seven (7) set installments, the first of which was due on October 15, 2004 and the last of which was due May 15, 2005. *Contract, ¶6*. The contract does not require any level of work by Mr. Allin as a condition precedent to his receipt of any of the installment payments. *Zicht depos., p. 32 (payments are not "linked to when the work is performed") A copy of Zicht's deposition transcript is attached as Exhibit A to Plaintiff's Concise Statement of Facts*. Mr. Allin was only obligated to be ready to perform that amount of snow removal work which was required by the amount of snowfall actually experienced. The Plaintiff does not dispute these facts.

As part of this deal, Heritage had the right to terminate the contract at any time, for any reason. *Contract, ¶17*. Mr. Allin did not have this same unilateral right to terminate the contract at will. However, regardless of the reasons for Heritage's termination, the contract also provided that, "Heritage shall pay [Mr. Allin] for all work or services performed and equipment and materials supplied to the date of termination." *Contract, ¶17*. Heritage cites this clause as the contractual basis supporting its demand for a full refund of the first installment payment. Heritage claims that since Mr. Allin did not plow any snow before the date of termination, Mr. Allin provided no work or services, and thus, he is not entitled to keep the installment payment.

Essentially, Heritage says that once it elects to terminate the contract, this clause grants it the right to retroactively calculate the dollar value of the "work or services performed" by Mr. Allin and, if that after-the-fact calculation results in a dollar figure lower than the amount of the installments paid to date, then Mr. Allin must refund to Heritage the difference. Under this

5.

theory, Heritage could wait until the last installment was due in May, 2005, and safely terminate the contract without fear of additional snowfall and then it could demand a refund based upon some type of fee-per-service formula. If this reading of the contract is accepted, then at the time Mr. Allin signed the contract, he could not know for sure the amount of money he would ultimately receive.

Heritage's interpretation of this clause of the contract is unreasonable and is not supported by the facts. First, this contract clause does not refer to nor does it make any reference to any sort of refund of any of the seven installment payments. In fact, there is no provision anywhere in the contract which makes any reference to any type or sort of refund of the installments. Thus, to accept Heritage's position one must be willing to add through creative interpretation a great deal of additional language to the contract.

Second, in light the financial risk to Mr. Allin which was created by Heritage's ability to unilaterally terminate the contract at will, it makes no sense to interpret this clause of the contract as an agreement by Mr. Allin to also grant Heritage the unfettered power to, after the fact, choose between either paying the specified annual fee or paying an amount based upon some yet-to-be defined formula for the value of the "work or services performed." Given the size of Mr. Allin's start-up investment in this project, and his running expenses to maintain the network of men and materials to cover all 115 sites, this would be an unreasonable reading of the contract.

Clearly, the more reasonable interpretation of this contract clause is that it guarantees nothing more than that Mr. Allin will be made whole "for all work and services

performed and equipment and materials supplied" if Heritage exercised its right to terminate. The clause was written for Mr. Allin's benefit and not as a means for Heritage to rewrite the payment terms to its advantage. Certainly it is not an agreement that Heritage may, in its sole discretion, unilaterally and retroactively revise the amounts owed under the contract. Rather, the clause offers some protection to Mr. Allin if the contract was terminated by Heritage under circumstances where the dollar amount of the installment payments which had been tendered to date did not cover all of the work performed. As an example, if Heritage terminated the contract on the eve of the due date for the second installment, Mr. Allin may be entitled to reimbursement for work and services rendered during the period between the first installment and the date of termination.

Therefore, there is a sufficient basis for reasonable and varying interpretations of the contract clause so as to present an issue for the jury. Thus, Heritage's motion must be denied.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA


By  /s/ Craig A. Markham
    Craig A. Markham, Esquire
    Attorney for Defendant
    150 East Eighth Street
    Erie, Pennsylvania 16501
    (814) 456-4000